# brownrudnick

MICHAEL J. BOWE
direct dial: 212.209.4905
fax: 212.938.2902
MBowe@brownrudnick.com

December 14, 2022

**VIA ECF**

Honorable Paul G. Gardephe
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 705
New York, New York 10007

RE:   *Sullivan v. Hwang, et al.*, Case No. 1:22-cv-5675-PCG
     Plaintiff's Response Defendants' Request for Pre-Motion Conference Regarding
     Motions to Dismiss

Dear Judge Gardephe:

This firm represents Plaintiff Brendan Sullivan and submits this response to the Defendants' joint letter for leave to move to dismiss the Amended Complaint. (ECF No. 105) (the "Joint Ltr."). Like their requests for leave to dismiss the original complaint, Defendants' fail to establish a strong predicate for dismissal, and acknowledge that Plaintiff has alleged valid claims under multiple theories that they cannot challenge, and which will survive the proposed motions to dismiss. These concessions, and Plaintiff's well-pled claims, dictate denying Defendants' request.

## I.   Background and Procedural History

Plaintiff previously submitted three responses to Defendants' prior pre-motion letters and addressed in detail each of Defendants' articulated grounds for dismissal, and for efficiency, those responses are incorporated in this single letter response to Defendants' renewed letters seeking leave to file a motion to dismiss. (*See* ECF Nos. 85, 86, 87). In response to that first round of letters, on November 16, 2022, the Court directed Plaintiff to amend his complaint to "add allegations of diversity jurisdiction[,]" and allowed Defendants to file an additional letter indicating whether they still wished to move to dismiss and, if so, on what grounds. (ECF No. 100). On November 23, Plaintiff filed the Amended Complaint alleging diversity as an additional jurisdictional basis. (ECF No. 101) ("Am. Compl.").


## II. ERISA Governs the Deferred Compensation Plan.

With respect to ERISA, the Joint Letter recycles Defendants' prior arguments and ignores Plaintiff's legal and factual responses in his prior letters.[1] Those letters demonstrated that the deferred compensation plan at issue (the "Plan") is an ERISA plan subject to heightened employee protections. (ECF No. 85, at 2-5). The Amended Complaint alleges that the Plan required employees to systematically defer income until after termination of their employment, constituting an ongoing administrative scheme. (Am. Compl. ¶¶ 116-118); *see also Tischman v. ITT/Sheraton Corp.*, 145 F.3d 561, 565 (2d Cir. 1998). Importantly, "neither Sullivan nor any other Plan participants were paid out their bonus income after five years[,] [and] [t]he only individual who ever received a pay out from the Plan, received it after leaving Archegos." (*Id.* ¶ 214; *see also* ¶ 108 (Sullivan was not allowed to collect on his 2016 deferred compensation payment, and was instead pressured to continue its deferral)).

Defendants' argument that the Plan is exempt from ERISA because it was labeled a "Bonus" plan (*see* Joint Letter, at 2; *see e.g.*, ECF No. 96-1) is of no consequence because "[t]he Plan cannot contract around [ERISA]." *Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000) (finding the terms of the plan violated ERISA); *see also Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263-64 (11th Cir. 2004) ("If the [plan] satisfies the statutory definition of an employee welfare benefit plan, then ERISA applies regardless of the intent of the plan administrators and fiduciaries."). Courts have uniformly held that "[w]e are not here concerned with whether the entity that established and maintained the plan intended ERISA to govern . . .we note that ERISA protection and coverage turns on whether the [plan] satisfies the statutory definition." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993) (internal quotation marks omitted).

Likewise, Defendants' conclusory claim that only Count 3 against Archegos Capital Management ("ACM")[2] will survive dismissal lacks merit. Plaintiff has sufficiently pled that each Defendant to an ERISA claim was a fiduciary to the Plan or a *de facto* fiduciary sufficient to impute fiduciary duties because each Defendant in Count One, Two, Four, and Five "exercise[d] discretionary control or authority over the plan's management, administration, or assets" sufficient to impute fiduciary duties. (*See* ECF 87 at 3-4; ECF 85 at 2-5); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citing § 1002(21)(A)); *id.* (holding fiduciaries are those who deal with "the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest."); *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999)(holding as *de facto* fiduciary the corporation's president who "signed contracts governing the plan. . .was responsible for authorizing and making payments to the Plan. . .exercised discretion in declining to authorize and make payments when. . ." the corporation went defunct); (*see e.g.* Am. Compl. ¶194 (Hwang, Pae, and Mills exercised authority to not pay out the plan

---

[1] Notably, Defendants again concede that Count Three (Wrongful Denial of Benefits) is a valid ERISA claim that will proceed past the motion to dismiss stage if the Court confirms ERISA governs. (Joint Ltr., at 2, 5; ECF No. 65, at 4).

[2] ACM, together with defendant Archegos Fund, LP, will be referenced collectively as "Archegos."



Hon. Paul G. Gardephe
December 14, 2022
Page 3

participants when ACM went defunct); ¶¶ 91, 175-177, 185 (Jones, Halligan, and Becker exercised discretion over Plan asset investment and disclosure to participants); ¶ 216 (Archegos Fund LP was the Fund to which all Plan assets were contributed); ¶¶ 65, 119, 207 (EWM managed the Plan accounts)).

### III. Alternatively, Plaintiff has Alleged Valid Common Law Claims Against All Defendants.[3]

As previously submitted, irrespective of the ERISA claims, Plaintiff has adequately alleged state law contract and tort claims against all Defendants. (*See* ECF Nos. 85, 86, 87). Defendants' renewed Joint Letter provides no colorable basis for dismissing all claims.

#### A. Contract Liability Extends Beyond ACM.

The Joint Letter argues that the breach of contract claim Count can only proceed against ACM and not the Grace and Mercy Foundation (the "Foundation") or any individual defendants. (Joint Ltr., 2-3). However, as previously submitted, these arguments ignore the allegations that Archegos and the Foundation were the alter egos of Defendant Hwang ("Hwang") and, as such, are treated as a single entity for liability purposes. (*See* ECF No. 87, at 2-3; Am. Compl. ¶¶ 125-137; 275; 360-367).

Plaintiff alleges that the Foundation was "functionally indistinguishable" from Archegos and that Archegos exercised complete domination over the Foundation, evidenced by a complete lack of corporate and operational functionality. (Am. Compl. ¶¶ 127-136). Courts have routinely held similar entities liable for the contract breaches of their alter ego entities. *See e.g.*, *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. Appx. 195, 197 (2d. Cir. 2005) (veil pierced and contract liability imposed against two corporations that functioned as a single entity). Further, Hwang's liability under the Plan contracts stems from Plaintiff's well-pled allegations that Archegos was Hwang's alter ego; it is not based on oral statements he made related to the Plan. (*See* ECF No. 87, at 3; Am. Compl. ¶¶ 53, 59, 138-193). Similarly, courts have allowed contract claims with individual officer/director liability to proceed when plaintiffs have established that corporations were merely their alter egos. *See e.g.*, *Walpert v. Jaffrey*, 127 F.Supp.3d 105, 129-130 (S.D.N.Y. 2015) (allegations of "disregard of the purported separate corporate form" were sufficient to allow contract claims to proceed against entity and CEO).[4]

---

[3] At this stage, the Court need not determine whether the common law claims are preempted and can allow all claims to advance to the discovery stage. *See e.g.*, *Aiena v. Olsen*, 69 F.Supp.2d 521, 531-32 (S.D.N.Y. 1999).

[4] With respect to claims of alter ego liability and piercing the corporate veil, courts look to the substance of the allegations as opposed to the form in which they are raised. *See e.g.*, *Nantong Sanhari Garment Co., Ltd. v. Fab Mill Inc.*, No. 21 Civ. 859 (NRB), 2022 WL 540756, at *1-2 (S.D.N.Y. Feb. 23, 2022) (refusing to dismiss standalone cause of action to pierce to corporate veil because it would be "premature to rule on the merits of these 'claims' at this stage of the litigation."). In the Amended Complaint, Plaintiff pled detailed allegations as to how the Foundation was "indistinguishable" from Archegos (*see* Am. Compl. ¶¶ 127-136), how Archegos was the alter ego of Hwang (*see* Am. Compl. ¶¶ 53, 59, 138-193), and how this failure to observe corporate formalities conferred liability to the Foundation and Hwang. (*Id.* ¶¶ 275, 286, 294, 308, 314, 319, 329, 339, 345, 359). Such allegations are more than enough to allow Plaintiff's alter ego claims to proceed to discovery.



Hon. Paul G. Gardephe
December 14, 2022
Page 4

      B.      Plaintiff's Contract and Tort Claims are Neither Duplicative Nor Barred by the Economic Loss Doctrine.

Ignoring the facts and applicable law, the Joint Letter attempts to argue that Plaintiff's tort claims must be dismissed because they are duplicative of Plaintiff's contract claim and barred by the economic loss doctrine. Both arguments fail. First, as Plaintiff previously demonstrated, because none of the Individual Defendants were parties to Plaintiff's plan contracts, Plaintiff did not bring contract claims against any of the Individual Defendants (except Hwang's imputed alter ego liability), therefore his contract claim is not duplicative of his tort claims against them. (*See* ECF No. 86, at 5); *see also See Sun Products Corp v. Bruch*, 507 Fed.Appx. 46, 47-48 (2d Cir. 2013). Regardless, as *Bayerische Landesbank, N.Y Branch v. Aladdin Capital Mgmt. LLC*, relied on by Defendants, makes clear, tort and contract claims are not duplicative when tort claims "spring from circumstances extraneous to, and not constituting elements of, the contract[.]" 692 F.3d 42, 59 (2d Cir. 2012) (contract and tort claims are not duplicative when plaintiff "reasonably relied on [defendant]'s representations of contractual performance, lost its entire investment due to [defendant]'s alleged gross negligence in managing the Reference Portfolio."). Here, Plaintiff's tort claims do not arise from the four corners of the Plan contracts, but rather stem from the collateral relationships he had with, and actions and statements made by, the Individual Defendants. The Amended Complaint alleges that the Individual Defendants fraudulently induced Plaintiff to invest in the Plan, fraudulently concealed information, invested Plaintiff's deferred compensation under false pretenses, and lied about the Plan's risk profile, all of which "describe an independent pattern of self-enrichment and deceit." *Senior Health Ins. Co. of PA. v. Beechwood Re Ltd.*, 345 F.Supp.3d 515, 524 (S.D.N.Y. 2018) (finding tort claims not duplicative of contract claims);(*see* ECF No. 86, note 3).[5] Additionally, the economic loss doctrine, which does not apply to fraud claims[6], does not bar tort claims based on "extra-contractual duties." *Ambac Assurance Corp. v. U.S. Bank Nat'l Assoc'n*, 328 F.Supp.3d 141, 158-160 (S.D.N.Y. 2018) (denying motion based on economic loss rule and finding plaintiff sufficiently claimed it was harmed as the result of a breach of an independent legal duty).

      C.      Plaintiff Has Sufficiently Stated Common Law Fiduciary Duty Claims.

"To state a claim for breach of fiduciary duty in New York, a plaintiff need only allege that the duty existed and that it was breached." *Muller-Paisner v. TIAA*, 289 Fed.Appx. 461, 465 (2d Cir. 2008). As alleged in the Amended Complaint, and detailed in Plaintiff's prior letter (*see* ECF No. 86, at 4), Plaintiff described the fiduciary duty each Individual Defendant had by (1) detailing the role each had at Archegos with respect to the Plan and (2) how each induced Plaintiff and others to rely on them, trust them, and invest in the Plan. (*See id.*, at note 3); *see also Assured*

---

[5] Claims will still be non-duplicative even if the independent legal duty is "certainly 'connected with and dependent upon the contract'" and is "largely assessed on the standard of care and other obligations set forth in the contract", *Bayerische*, 692 F.3d at 59, and the fact that the tort damages "may be of the same type does not matter, so long as they did not flow from the breach of contract." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 208 A.D.3d 423, 430-31 (1st Dept. 2022) (finding "plaintiffs allege that breach of [] extracontractual duties caused damages separate from the damages caused by the breaches of their contractual duties.").
[6] *See Weisblum Prophase Labs, Inc.*, 88 F.Supp.3d 283, 297-98 (S.D.N.Y. 2015).


*Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 80 A.D.3d 293, 306 (1st Dept. 2010) (where a defendant has discretionary authority to manage a plaintiff's investment accounts, defendant "owe[s] [the plaintiff] a fiduciary duty of the highest good faith and fair dealing."). Further, the Amended Complaint details how Defendants breached their fiduciary duties by lying, concealing, and failing to provide full and accurate information, all for the purpose of advancing their own interests over those of the Plaintiff. (*See* ECF No. 86, note 3). With respect to aiding and abetting, the Amended Complaint details how the Individual Defendants furthered the fiduciary breaches of Hwang and others by substantially furthering the misinformation scheme being fed to employees, all of which caused Plaintiff to lose his deferred compensation. (*See id.*). Such allegations are sufficient to allow Plaintiff to proceed to discovery.

        D.        <u>The Amended Complaint Fully Complies with All Pleadings Requirements.</u>[7]

In response to Defendants' prior arguments under Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, Plaintiff previously demonstrated his particularized allegations as to each of the alleged fraudulent statements, omissions, and acts, and each Defendant's role in all such actionable conduct. (*See* ECF No. 86, at 2-4). The Joint Letter makes no serious effort to confront these detailed allegations.

Most notably, Defendants ignore the actual allegations of the Amended Complaint and the law in arguing that scienter is not adequately alleged under Rule 9(b). In this Circuit, "[t]he scienter element is satisfied if the misrepresentation was 'known to be untrue or recklessly made.'" *Greenway II, LLC v. Wildenstein & Co. Inc.*, No. 19 Civ. 4093 (JCM) (RWL), 2019 WL 11278321, at *6 (S.D.N.Y. Oct. 8, 2019) (quoting *Jo Ann Homes at Bellmore v. Dworetz*, 25 N.Y.2d 112, 119 (1969)). As previously demonstrated, the Amended Complaint alleges that the Individual Defendants affirmatively knew that their statements about the financial well-being of Archegos portfolio and the Plan's trading and risk profile were materially false. (*See e.g.*, ECF 86, at 3-4 (citing specific allegations of "flat-out" lies and purposefully misleading statements)). The law is clear that these allegations of affirmative, knowing misrepresentations of known facts sufficiently allege scienter. *See In re Reserve Fraud Securities and Derivative Litig.*, 732 F.Supp.2d 310, 321-22 (S.D.N.Y. 2010) (Gardephe, J.) (allegations established "strong circumstantial evidence of conscious misbehavior or recklessness.") (citation omitted).

For the reasons set forth in Plaintiff's prior Pre-Motion Letters and herein, there is no sufficient predicate for a motion to dismiss, and no possibility that any such motion will result in the dismissal of this action or materially narrow the facts at issue. Accordingly, the Defendants' request for leave should be denied.

---

[7] If Defendants continue to call into question Plaintiff's domicile, Plaintiff will submit a declaration and supporting documentation that will easily establish, by clear and convincing evidence, both residence in Tennessee and the intention to remain there. *See Scherbakovskiy v. Seitz*, No. 03 CV 1220 (RPP), 2010 WL 1063566, at *2 (S.D.N.Y. Mar. 23, 2010). With respect to the Archegos entities, Defendants' own filing (made after the submission of the Joint Letter), establish that they are citizens of New Jersey, and completely diverse from Plaintiff. (ECF No. 107). Finally, should EWM, LLC challenge the diversity allegations made against it, Plaintiff is entitled to jurisdictional discovery as to the citizenship of its members. *See Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC*, No. 20 Civ. 731 (PAE), 2022 WL 771629, at *3 (S.D.N.Y. Dec. 29, 2020).


Hon. Paul G. Gardephe
December 14, 2022
Page 6

Sincerely,

**BROWN RUDNICK LLP**

Michael J. Bowe

cc: All Counsel, via ECF