**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
BRENDAN SULLIVAN                                    :
                                                     :
                              Plaintiff,             :
                                                     :
              v.                                     :
                                                     :
SUNG KOOK ("BILL") HWANG, ARCHEGOS     :          No.: 1:22-cv-05675 (PG)
CAPITAL MANAGEMENT, LP, ARCHEGOS       :
CAPITAL MANAGEMENT, LLC, THE GRACE     :
AND MERCY FOUNDATION, INC., ARCHEGOS   :
FUND LP, EWM LLC, d/b/a EWM GLOBAL,     :
ANDY MILLS, DIANA PAE, BRIAN JONES,     :
SCOTT BECKER, and PATRICK HALLIGAN,    :
                                                     :
                              Defendants.            :
----------------------------------------------------------------x

 

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SUNG KOOK ("BILL") HWANG'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ................................................................................................................ 4

I.    The Amended Complaint Fails To Meet Basic Notice-Pleading Requirements of Rule 8 and the Heighted Pleading Requirements of Rule 9. ........................................................ 4

II.   Plaintiff's Individual Claims Against Hwang Should Be Dismissed For Failure to Plead the Necessary Elements of Each Claim. ................................................................ 7

      A.    The Fiduciary Duty-based Claims (Counts 7, 14) Must Be Dismissed. ................. 7

      B.    The Fraud And Misrepresentation-based Claims (Counts 8, 11, 12, 13, 15) Must Be Dismissed. ........................................................................................... 9

            1.    The Security of Employees' Baseline Contributions .................................. 9

            2.    Archegos's Trading Strategy and Risk Profile ......................................... 10

      C.    Plaintiff's Civil Conspiracy Claim (Count 18) Must Be Dismissed. .................... 12

      D.    Plaintiff's Professional Negligence/Malpractice Claim (Count 17) Must Be Dismissed. ........................................................................................... 13

      E.    Plaintiff's Tortious Interference With Contract Claim (Count 19) Must Be Dismissed. ........................................................................................... 15

      F.    Plaintiff's Promissory Estoppel Claim (Count 16) Must Be Dismissed. .............. 16

III.  All Claims Against Hwang Must Be Dismissed Because They Are Premised Either On An Alleged Oral Promise Made by Him Or Upon ACM's Alleged Status As Hwang's "Alter Ego." ........................................................................................... 19

      A.    The Statute of Frauds Precludes All Claims Premised On Alleged Oral Promises by Hwang (Counts 5, 8, 11, 12, 13, 15, 16). ........................................ 19

      B.    Plaintiff's "Alter Ego" Pleading Fails as a Matter Of Law. ................................. 21

CONCLUSION .......................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 LLC v. J&R 240 LLC*,
   653063/2019, 2020 N.Y. Misc. LEXIS 2451 (Sup Ct. New York Co. May 21,
   2020) ...................................................................................................................13, 14

*Abercrombie v. Andrew Coll.*,
   438 F. Supp. 2d 243 (S.D.N.Y. 2006)......................................................................8

*Am. Fed. Title Corp. v. GFI Mgmt. Servs.*,
   716 F. App'x 23 (2d Cir. 2017) ..............................................................................22

*Amiron Dev. Corp. v. Sytner*,
   12-cv-3036, 2013 U.S. Dist. LEXIS 47033 (E.D.N.Y. Mar. 29, 2013)....................4

*Apace Communs., Ltd. v. Burke*,
   522 F. Supp. 2d 509 (W.D.N.Y. 2007) ...................................................................25

*Apex Mar. Co. v. OHM Enters.*,
   10-cv-8119, 2011 U.S. Dist. LEXIS 35707 (S.D.N.Y. Mar. 30, 2011)...................22

*Asay v. Penduoduo Inc.*,
   2021 U.S. App. LEXIS 26176 (2d Cir. Aug. 31, 2021).........................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................7

*Atuahene v. City of Hartford*,
   10 Fed. Appx. 33 (2d Cir. 2001)..............................................................................4

*Barns & Farms Realty, LLC v. Novelli*,
   82 A.D.3d 689 (2d Dept. 2011) .........................................................................12, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................7

*Bentivoglio v. Even Cardio Grp., Inc.*,
   18-cv-2040, 2019 U.S. Dist. LEXIS 206381 (S.D.N.Y. Nov. 27, 2019)...............23

*Busker on the Roof P'ship v. Warrington*,
   283 A.D.2d 376, 725 N.Y.S.2d 45 (1st Dept. 2001).............................................15

*CapLOC, LLC v. McCord*,
   17-cv-5788, 2018 U.S. Dist. LEXIS 99321 (S.D.N.Y. June 12, 2018) ..................10

*Castle Oil Corp. v. Thompson Pension Emp. Plans, Inc.*,
    299 A.D.2d 513 (2d Dept. 2002) .........................................................................13

*Chase Scientific Research, Inc. v. NIA Group, Inc.*,
    96 N.Y.2d 20 (2001) ............................................................................................13

*Childers v. N.Y. & Presbyterian Hosp.*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014).....................................................................8

*Cohen v. Koenig*,
    25 F.3d 1168 (2d Cir. 1994)................................................................................11

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
    252 F. Supp. 3d 274 (S.D.N.Y. 2017)..................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003)..................................................................25

*Dahan v. Weiss*,
    120 A.D.3d 540 (2d Dept. 2014) .........................................................................20

*Dalton v. Union Bank of Switzerland*,
    134 A.D.2d 174, 520 N.Y.S.2d 764 (1st Dept. 1987)..........................................17

*DH Cattle Holdings Co. v. Smith*,
    195 A.D.2d 202, 607 N.Y.S.2d 227 (1st Dept. 1994)..........................................11

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)................................................................................6

*Doe v. EviCore Healthcare MSI, LLC*,
    22-cv-530, 2023 U.S. App. LEXIS 4794 (2d Cir. Feb. 28, 2023) ..........................6

*Doehla v. Wathne Limited*,
    1999 WL 566311 (S.D.N.Y. 1999)........................................................................6

*In re DRDGold Ltd.*,
    472 F. Supp. 2d 562 (S.D.N.Y. 2007)..............................................................11, 12

*In re EDAP TMS S.A. Secs. Litig.*,
    14-cv-6069, 2015 U.S. Dist. LEXIS 121960 (S.D.N.Y. Sept. 14, 2015) ...............11

*Eden v. St. Luke's-Roosevelt Hosp. Ctr.*,
    96 A.D.3d 614, 947 N.Y.S.2d 457 (1st Dept. 2012).............................................8

*Ellis v. Provident Life & Accident Ins. Co.*,
    3 F. Supp. 2d 399 (S.D.N.Y. 1998) .....................................................................18

*Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*,
  804 F.2d 787 (2d Cir. 1986)..........................................................................................18

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
  12 N.Y.3d 553, 883 N.Y.S.2d 147 (2009) ......................................................................9

*Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank*,
  552 Fed. Appx. 13 (2d Cir. 2014)..................................................................................23

*Freedman v. Pearlman*,
  271 A.D.2d 301, 706 N.Y.S.2d 405 (1st Dept. 2000)......................................................9

*Gambello v. Time Warner Communs., Inc.*,
  186 F. Supp. 2d 209 (E.D.N.Y. 2002) ...........................................................................18

*Grove Press, Inc. v. Angleton*,
  649 F.2d 121 (2d Cir. 1981)...........................................................................................13

*Haggerty v. Ciarelli & Dempsey*,
  374 Fed. Appx. 92 (2d Cir. 2010) ....................................................................................9

*Henneberry v. Sumitomo Corp. of America*,
  04-cv-2128, 2007 WL 2068346 (S.D.N.Y. July 12, 2007)...............................................7

*Holmes v. Allstate Corp.*,
  11-cv-1543, 2012 U.S. Dist. LEXIS 24883 (S.D.N.Y. Jan. 27, 2012) .............................4

*Ibt Media v. Pragad*,
  652277/2022, 2022 N.Y.L.J. LEXIS 2665 (Sup. Ct. New York Co. Jan. 3,
  2023) ..............................................................................................................................19

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
  532 A.2d 983 (Del. Ch. 1987)........................................................................................22

*Kaplan v. Continuum Health Partners, Inc.*,
  107226/2010, 2011 N.Y. Misc. LEXIS 6796 (Sup. Ct. New York Co. Jan. 11,
  2011) ..............................................................................................................................17

*Kleinberg v. Radian Group, Inc.*,
  240 F. Supp. 2d 260 (S.D.N.Y. 2002)............................................................................19

*Knopf v. Phillips*,
  702 Fed. Appx. 639 (2d Cir. 2020).................................................................................15

*Ladouceur v. Credit Lyonnais*,
  584 F.3d 510 (2d Cir. 2009)...........................................................................................21

iv

*Lama Holding Co. v. Smith Barney, Inc.*,
   88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ............................................................................15

*Lind v. Vanguard Offset Printers, Inc.*,
   857 F. Supp. 1060 (S.D.N.Y. 1994) ...................................................................................9

*MacKay v. Paesano*,
   68232-14, 2018 N.Y. Misc. LEXIS 474 (Sup. Ct. Suffolk Co. Feb. 6, 2018) ........................20

*In re Magnesium Corp. of Am.*,
   399 B.R. 722 (Bankr. S.D.N.Y. 2009) ...............................................................................14

*Martin Greenfield Clothiers, Ltd. v. Brooks Bros. Grp.*,
   175 A.D.3d 636 (2d Dept. 2019) ......................................................................................20

*MCI WorldCom Communs., Inc. v. N. Am. Communs. Control, Inc.*,
   98-cv-6818, 2003 U.S. Dist. LEXIS 9212 (S.D.N.Y. June 4, 2003) ......................................11

*McLaughlin v. Anderson*,
   962 F.2d 187 (2d Cir. 1992) ..............................................................................................6

*Mills v. Polar Molecular*,
   12 F.3d 1170 (2d Cir. 1993) ..............................................................................................6

*Monsour v. N.Y. State Office for Developmental Disabilities*,
   1:13-cv-336, 2014 U.S. Dist. LEXIS 32484 (N.D.N.Y. Mar. 12, 2014) ...............................18

*Morris v. N.Y.S. Dep't of Taxation and Fin.*,
   82 N.Y.2d 135 (1993) .....................................................................................................22

*Murray v. Xerox Corp.*,
   811 F.2d 118 (2d Cir. 1987) ............................................................................................11

*Music Mix Mobile LLC v. Newman*,
   592 B.R. 292 (Bankr. S.D.N.Y. 2018) ..........................................................................22, 24

*N. Fork Partners Inv. Holdings, LLC v. Bracken*,
   20-cv-2444, 2023 U.S. Dist. LEXIS 99132 (S.D.N.Y. June 7, 2023) ...................................11

*Netto v Rastegar*,
   2012 U.S. Dist. LEXIS 24903 (S.D.N.Y. Feb. 27, 2012) ..................................................4, 15

*NRP Holdings LLC v. City of Buffalo*,
   916 F.3d 177 (2d Cir. 2019) ............................................................................................16

*Ocampo v. 455 Hospitality LLC*,
   14-cv-9614, 2021 U.S. Dist. LEXIS 178875 (S.D.N.Y. Sept. 20, 2021) ...............................23

v

*Pappas v. Passias*,
   271 A.D.2d 420 (2d Dept. 2000) ...........................................................................8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
   592 F. Supp. 2d 608 (S.D.N.Y. 2009)..............................................................14, 15

*Perrera v. Gluck*,
   295 F.3d 215 (2d Cir. 2002)................................................................................21

*Rather v. CBS Corp.*,
   68 A.D.3d 49 (1st Dept. 2009).............................................................................9

*Rice v. Intercept Pharms., Inc.*,
   21-cv-0036, 2022 U.S. Dist. LEXIS 50277 (S.D.N.Y. Mar. 21, 2022)....................2

*Roselink Investors, L.L.C. v. Shenkman*,
   386 F. Supp. 2d 209 (S.D.N.Y. 2004)..................................................................16

*Rosenberg v. Home Box Office, Inc.*,
   601924/2005, 2006 N.Y. Misc. LEXIS 9418 (Sup. Ct. New York Co. Jan. 30,
   2006) ..................................................................................................................17

*Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Invs. Inc.*,
   117 A.D.3d 447, 985 N.Y.S.2d 54 (1st Dept. 2014)............................................25

*Shapira v. Charles Schwab & Co.*,
   225 F. Supp. 2d 414 (S.D.N.Y. 2002)..................................................................17

*Spinelli v. NFL*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......................................................................7

*In re Stamou*,
   8-09-78895, 2013 Bankr. LEXIS 227 (Bankr. E.D.N.Y. Jan. 17, 2013)................24

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157 (2d Cir. 2021)..........................................................................11, 12

*TNS Holdings, Inc. v. MKI Securities. Corp.*,
   92 N.Y.2d 335 (1998) .........................................................................................22

*Van Brunt v. Rauschenberg*,
   799 F. Supp. 1467 (S.D.N.Y. 1992)......................................................................17

*Vista Food Exch., Inc. v. BenefitMall*,
   138 A.D.3d 535, 31 N.Y.S.3d 9 (1st Dept. 2016).................................................14

*Vitale v. Steinberg*,
   307 A.D.2d 107 (1st Dept. 2003).........................................................................8

*Webb v. Mentor Worldwide LLC,*
   453 F. Supp. 3d 550 (N.D.N.Y. 2020) ......................................................................4

*Wilson v. Dantas,*
   29 N.Y.3d 1051, 58 N.Y.S.3d 286 (2017) .............................................................16

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
   933 F.2d 131 (2d Cir. 1991).............................................................................23, 24

*Zydel v. Dresser Indus.,*
   764 F. Supp. 277 (W.D.N.Y. 1991) ......................................................................21

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................4, 5, 12

Fed. R. Civ. P. 9 .......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 7, 8, 23

Defendant Sung Kook (Bill) Hwang respectfully submits this brief[1] in support of his Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## PRELIMINARY STATEMENT

Plaintiff asks this Court to award him "not less than $50 million," at the expense of all of his former colleagues and all other creditors of Archegos Capital Management LLC, a "family office" investment fund that collapsed, and at which Plaintiff was employed.  As many investment firms do, Archegos gave its employees an opportunity to share in any success of the fund by creating a deferred compensation program in which employees would be awarded a potential bonus in an amount that would fluctuate with the value of the funds managed by Archegos.[3]

Archegos suffered massive investment losses in March 2021, such that billions of dollars of value were reduced essentially to nothing over the course of a single week.  According to the deferred compensation program's plan documents, the Archegos employees were only unsecured creditors of Archegos.  Nevertheless, Plaintiff seeks to recover the full notional value of his

---

[1]     Hwang joins and incorporates by reference all of the arguments set forth in the brief filed on behalf of ACM, the Fund and the Individual Defendants  ("ACM Brief") except Section I.B.3, which is addressed to a claim (Count Three) that is not asserted against Hwang, as well as those set forth in the brief filed on behalf of the Grace & Mercy Foundation addressed to the alter ego claims (Points I.B and III.J).

[2]     All facts referenced herein are based on allegations in the Amended Complaint [ECF 101]—which, to be clear, are not conceded by Hwang—and documents incorporated therein.

[3]     All of the funds invested at Archegos were those of Hwang and his family.  There were no outside investors and employees contributed no money to the investment fund.  Instead, as the employees well understood the amounts at issue in the deferred compensation program were purely "notional book entries" that tracked the amount that each employee was entitled to claim in bonus compensation, which amount would fluctuate with the value of the funds managed by Archegos. (Amended Complaint ¶ 96 (incorporating the 2018, 2019, and 2020 Elective Plan Contracts by reference).)  Because no actual money was ever contributed, the deferred compensation was never segregated in any way from the Hwang family funds that Archegos managed. (*Id.*)

deferred compensation, measured prior to the Fund's collapse, not only from Archegos but also personally from Hwang and other former Archegos executives, notwithstanding clear contractual language in the agreements governing the plan that precludes such claims.

Plaintiff contends that the Defendants should pay him $50 million because unspecified oral promises were supposedly made to him, but—despite filing a 100-page complaint filled with *ad hominem* attacks—Plaintiff never specifies who said and did what.   The vague pleading impermissibly groups all the non-corporate defendants together as if they were one unit, and does little more than generically claim that the Defendants "lied," "concealed," "promised," and "induced," without providing any of the details required by the Federal Rules of Civil Procedure.

The Amended Complaint should also be dismissed because  it fails to plead numerous elements required by the various state law causes of action it invokes, is barred by the Statute of Frauds, and fails to plead a viable theory of "alter ego" liability.  Accordingly, Hwang respectfully requests that the Court dismiss the Amended Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiff is a former employee of Archegos Capital Management, LLC ("ACM") and/or Archegos Fund LP (the "Fund") (collectively "Archegos"') who contributed portions of his bonus compensation to a deferred compensation plan (the "Plan").  (Am. Compl. ¶ 6.)  That Plan was governed by written plan documents.  (*Id*. ¶¶ 65, 84, 94-106.)[4]  Plaintiff claims that ACM promised

---

[4]     The Court may consider the 2018, 2019 and 2020 Elective Plan Contracts[ECF 96-1 to 96-3]; plaintiff's 2019 and 2020 Mandatory Plan Contracts [ECF 96-4 to 96-5], and the 2016-2018 Mandatory Plan Contracts [ECF 96-6 and 99-1 to 99-2] (collectively, the "Plan Documents") because they are referenced and incorporated into the Amended Complaint.  *See Rice v. Intercept Pharms., Inc.*, 21-cv-0036, 2022 U.S. Dist. LEXIS 50277, at *16 (S.D.N.Y. Mar. 21, 2022).

that the bonus amounts that Plaintiff deferred annually would grow based on the percentage by which the invested capital of ACM increased, with no downside risk to him.  (*Id.* ¶ 84.)

When the program was first launched in 2016, the written plan documents provided that the "deferred amount would increase 'by the percentage that the Invested Capital of [the Fund] has increased in value during that year; provided however that if the Fund's Invested Capital declines in value in any calendar year, the amount of the Deferred Payment will remain the same as at the end of the prior calendar year.'"  (*Id.*, quoting the 2016 and 2017 Plan Letters, emphasis removed).  Not long after, however, the guarantee promised by ACM was changed, with Plaintiff's knowledge, and became more restricted:  "From 2018 on," the written plan documents were amended and provided that "[i]f the Fund's Invested Capital has declined from the original grant value at the end of the deferral period, the Deferred Payment will remain the same as the original grant value."  (*Id.* ¶ 89, quoting a 2018 email discussing changes to the Plan.)  Thus, pursuant to the 2018 amendments, ACM promised to insure only employees' baseline contributions.

Other documents incorporated into the Amended Complaint also make clear that only ACM was responsible for the Plan.  For example, the 2016 and 2017 Bonus Letters (incorporated by reference in the Amended Complaint, ¶ 94) state that "Any Bonus payment referred to herein is the sole obligation of the Company…."  Accordingly, the Amended Complaint does not contain any specific allegation that Mr. Hwang promised to be personally responsible for ACM employees' deferred compensation by way of any written document or oral representation.

From the inception of the Plan in 2016 through his last contribution year, which was 2020, Plaintiff alleges that he deferred a portion of his bonus compensation each year (a total of $3.77 million) into the Plan.  (*Id.* ¶¶ 107-12.)  At "the peak in March" 2021, Plaintiff alleges that his $3.77 million in contributions had grown to "at least $50 million."  (*Id.* ¶ 220.)  However, in late

March 2021, ACM suffered significant investment losses, and it informed Plaintiff (and all other employees) that it lacked funds to pay the baseline deferred bonus contributions and that the book value of those contributions was "zero." (*Id.* ¶¶ 185-90, 194.) Plaintiff thereafter resigned from Archegos on March 30, 2021, and he alleges that the timing of his resignation entitles him to the value of his deferred compensation not as of the day he quit but as of the end of the preceding calendar month (*i.e.*, February 28, 2021), before Archegos suffered its losses. (*Id.* ¶¶ 100, 114.)

## ARGUMENT

### I.   The Amended Complaint Fails To Meet Basic Notice-Pleading Requirements of Rule 8 and the Heighted Pleading Requirements of Rule 9.

Federal Rule of Civil Procedure 8(a) is violated where a plaintiff engages in "group pleading," failing to give each defendant fair notice of the claims against him or her individually. *Holmes v. Allstate Corp.*, 11-cv-1543, 2012 U.S. Dist. LEXIS 24883, *69 (S.D.N.Y. Jan. 27, 2012), *adopted by* 2012 U.S. Dist. LEXIS 24903 (S.D.N.Y. Feb. 27, 2012). Group pleading "fails to satisfy either the notice-pleading requirements of Rule 8 or the heightened pleading standard under Rule 9(b)" that applies to fraud claims. *Amiron Dev. Corp. v. Sytner*, 12-cv-3036, 2013 U.S. Dist. LEXIS 47033, at *15 (E.D.N.Y. Mar. 29, 2013). "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Sullivan's] complaint fail[s] to satisfy th[e] minimum standard" required to plead his claims. *Webb v. Mentor Worldwide LLC*, 453 F. Supp. 3d 550, 562 (N.D.N.Y. 2020) (quoting *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)).

Specifically, the Amended Complaint most often uses the shorthand "Executive Defendants" to lump together all six named non-corporate defendants.[5] Though this label may at

---

[5]     All capitalized terms not defined herein have the meaning used in the Amended Complaint.

first seem like an innocuous abbreviation, it reveals itself in its ubiquity (94 times in a 100-page Amended Complaint) to be a tool to obscure the lack of any detail that would differentiate the allegations against each of those six defendants.  Indeed, the Amended Complaint uses that term to collectively allege that the Executive Defendants: made misrepresentations (Am. Compl. ¶¶ 53, 69, 156-57); betrayed Plaintiff's trust (¶ 6); fraudulently induced employees to invest in the Plan (¶ 8); concealed trading strategy (¶ 13); lied about the nature and risk of the Fund's investments (¶¶ 75, 160); pressured employees to participate in the Plan (¶¶ 91-92, 124); and created a "ruse" about considering block sales (¶ 162).  With respect to each of these sets of allegations, the Amended Complaint provides no particularity about which defendant purportedly did or said what.  Other paragraphs use different words but still impermissibly group some of the defendants together to make broad accusations without differentiating between them:  *e.g.*, "they" made various promises (¶¶ 52, 85); made and/or repeated misrepresentations (¶¶ 150, 154); committed fraud (¶ 310); and tortiously interfered with Plaintiff's contractual rights under the Plan.  (¶ 352).[6]  These vague, grouped allegations do not, as a matter of law, provide Hwang the minimum notice required under Rule 8 and, therefore, the Amended Complaint should be dismissed.

Plaintiff claims he relied upon allegedly fraudulent misrepresentations when he chose to defer his compensation.  Pursuant to Federal Rule of Civil Procedure 9(b), a complaint alleging

---

[6]      In plaintiff's pre-motion letter [ECF 86], he claims that the Complaint is "replete" with allegations of "specific, fraudulent conduct attributable to Hwang," citing paragraphs in the Complaint.  Most of these allegations deal merely with plaintiff's disgruntled view of Hwang's trading strategy.  (Am. Compl. ¶¶ 169-89.)  Others include the generic reference to "Executive Defendants" (¶ 83); assert vague claims that Hwang "resorted to more aggressive recriminations and wilder misrepresentations" with no detail at all (¶ 157); allege only generally that Hwang intended to de-risk the portfolio (¶ 160-63); and claim that Plaintiff might be provided the ability to manage a "fund of one" sometime in the indefinite future.  (¶¶168-69.)  Thus, even when Plaintiff does mention Hwang specifically, the allegations are too vague to pass pleading muster.

such fraud must (a) specify the statements, oral or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions; (b) identify the speaker or the writer; (c) state where, when, and to whom the statements were made; and (d) explain why the statements were fraudulent. *Doe v. EviCore Healthcare MSI, LLC*, 22-cv-530, 2023 U.S. App. LEXIS 4794, at *4 (2d Cir. Feb. 28, 2023).Thus, Rule 9(b) requires a plaintiff to identify which defendant caused each allegedly fraudulent communication to be spoken, written, wired or mailed, and to whom; when the communication was made; and how it furthered the fraudulent scheme. *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).

Additionally, Rule 9(b) requires that the complaint allege facts specifying each defendant's particular contribution to the fraud. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). "It is abundantly clear that in cases involving more than one defendant, a pleading cannot satisfy Rule 9(b) by 'vaguely attribut[ing] the alleged fraudulent statements to 'defendants.'" *Doehla v. Wathne Limited*, 1999 WL 566311, at *17 (S.D.N.Y. 1999) (quoting *Mills v. Polar Molecular*, 12 F.3d 1170, 1175 (2d Cir. 1993)). This alone warrants dismissal of all of the claims alleging or sounding in fraud.[7] For all of the reasons stated *supra* § I (*e.g.*, Plaintiff's prolific use of group pleading and failure to specifically allege that Hwang misrepresented anything, let alone where, when, and to whom), the Amended Complaint should be dismissed for failure to meet the heightened Rule 9 standard.

---

[7] *See* Counts 8, 11, 12, 13, and 15. Plaintiff's breach of fiduciary duty claim must also meet the Rule 9 standard to the extent it is based on allegations of fraud. *See infra* n. 9.

## II.     Plaintiff's Individual Claims Against Hwang Should Be Dismissed For Failure to Plead the Necessary Elements of Each Claim.[8]

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  *Id.*  Instead, the Court must examine the well-pleaded factual allegations, which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 678-79.  Here, the Amended Complaint fails to state a claims for relief because it fails to plead essential elements of each of the claims against Hwang.

### A.     The Fiduciary Duty-based Claims (Counts 7, 14) Must Be Dismissed.

Plaintiff fails to adequately allege the existence of a fiduciary relationship.[9] Many of the Amended Complaint's allegations regarding the existence of a fiduciary duty are legal conclusions and are thus not entitled to the presumption of truth.  *Twombly*, 550 U.S. at 555; *see also, e.g., Spinelli v. NFL*, 96 F. Supp. 3d 81, 133 (S.D.N.Y. 2015) (dismissing breach of fiduciary duty claims because complaint only conclusorily alleged the existence of a fiduciary relationship).  The Amended Complaint fails to "adequately plead facts demonstrating the existence of a duty owed to [Sullivan] by the defendants or a fiduciary relationship that would support [Sullivan's] claim

---

[8]      The claims against Hwang are Counts 1-2, 4-5, 7-8 and 11-20. Count 6 (Breach of Contract) is not directed at Hwang. The Amended Complaint does not contain a Count 9 or 10.

[9]      "Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's [alleged] fraudulent conduct, . . . such as an attempt 'to induce action or inaction on the part of the investors by means of falsehoods or material omissions.'"  *Henneberry v. Sumitomo Corp. of America*, 04-cv-2128, 2007 WL 2068346, at *30 (S.D.N.Y. July 12, 2007).

for damages." *Pappas v. Passias*, 271 A.D.2d 420 (2d Dept. 2000) (affirming motion to dismiss fiduciary duty claims). Thus, "courts routinely have held that conclusory allegations of a special relationship [of] complete trust and confidence are insufficient to state a claim of a fiduciary duty." *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (internal quotation omitted) (dismissing breach of fiduciary duty claim pursuant to Rule 12(b)(6)); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 275 (S.D.N.Y. 2006) (dismissing breach of fiduciary duty claim and explaining "absent an allegation of a special relationship, mere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship.").

Here, the allegations in the Amended Complaint that refer to a "fiduciary duty" simply allege, in conclusory fashion, that Hwang assumed fiduciary duties or breached them. (*e.g.*, Am. Compl. ¶¶ 10, 17, 79, 158, 177, 180-81, 210, 219, 221.) Likewise, the sole allegation that Hwang was in a "special position" because he was a "custodian[] of [Sullivan's] deferred compensation savings" (*id.* ¶ 277) is exactly the kind of "conclusory allegation of a special relationship [of] complete trust and confidence…" *Childers*, 36 F. Supp. at 306, that Rule 9 does not permit.

More specifically, agreements regarding compensation structure or profit sharing (Am. Compl. ¶¶ 277, 279) do not, as a matter of law, automatically create a fiduciary relationship between employer and employee. *Eden v. St. Luke's-Roosevelt Hosp. Ctr.*, 96 A.D.3d 614, 615, 947 N.Y.S.2d 457, 459 (1st Dept. 2012); *Vitale v. Steinberg*, 307 A.D.2d 107, 109-110 (1st Dept. 2003) (affirming dismissal of fiduciary duty claims on motion to dismiss and explaining "Neither an agreement by an employer to share profits with an employee as compensation for the latter's services nor a contract 'of mere hiring and providing for compensation in a particular manner supposedly tending to induce greater energy and faithfulness on the part of the employee' creates a fiduciary relationship between the employer and employee.") (affirming dismissal of fiduciary

duty claim on motion to dismiss).  Nor does an employee's trust in his employer to "treat him fairly" automatically give rise to a fiduciary duty.  *Freedman v. Pearlman*, 271 A.D.2d 301, 307, 706 N.Y.S.2d 405, 409 (1st Dept. 2000).  Indeed, under New York law, an employer-employee relationship is not fiduciary in nature.  *See Lind v. Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1067 (S.D.N.Y. 1994).  In particular, at-will employment relationships, such as those at issue here, do not create fiduciary relationships.  *Rather v. CBS Corp.*, 68 A.D.3d 49, 55 (1st Dept. 2009) ("The law in this Department, and indeed enunciated in every reported appellate-division-level case, is that employment relationships do not create fiduciary relationships.").

Here, Plaintiff's Amended Complaint contains no more than conclusory allegations of a special relationship—but it is one based entirely on an employer-employee relationship, and is focused on an alleged compensation structure—none of which are legally sufficient for a fiduciary duty claim to survive.  Accordingly, both of the fiduciary duty claims should be dismissed.

**B.     The Fraud And Misrepresentation-based Claims (Counts 8, 11, 12, 13, 15) Must Be Dismissed.[10]**

Plaintiff's allegations of fraud and misrepresentations are each based on alleged false statements about one of two things:  either (1) the security of employees' baseline contributions, or (2) Archegos's trading strategy and risk profile.

**1.     The Security of Employees' Baseline Contributions**

To state a claim for common law fraud under New York law, a plaintiff must plausibly allege reasonable reliance upon a material misrepresentation.  *See, e.g., Haggerty v. Ciarelli & Dempsey*, 374 Fed. Appx. 92, 94 (2d Cir. 2010) (citing *Eurycleia Partners, LP v. Seward & Kissel,*

---

[10]     Hwang joins in and incorporates by reference the argument in the ACM Brief concerning Plaintiff's failure to adequately plead scienter.  (ACM Brief at 20, quoting Am. Compl. ¶ 289).  We have not set forth that argument separately in this brief in order to avoid unnecessary duplication.

*LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 150 (2009)).  The Amended Complaint fails to do so.  Plaintiff alleges that "Defendants" (defined to include Hwang and others) misrepresented that "the deferred compensation profits were added to the principal amount each year and would not decrease once capitalized," (Am. Compl. ¶ 324), but this allegation omits the critical detail of *when* Hwang allegedly made that statement.  If Plaintiff's claim is that Hwang made a representation about the security of any annual increase in the value of employees' contributions in 2018 or later, Plaintiff cannot and does not plead reasonable reliance as a matter of law because such a representation would be contradicted by the governing Plan documents.  *See, e.g., CapLOC, LLC v. McCord*, 17-cv-5788, 2018 U.S. Dist. LEXIS 99321, at *29 (S.D.N.Y. June 12, 2018) ("A party's reliance is not reasonable where it is directly contradicted by a contractual provision."); *Colonial Funding Network, Inc.  v. Epazz, Inc.*, 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017) (holding that plaintiff cannot establish reasonable reliance on oral representation when an express provision of written agreement contradicts the oral statement).If, on the other hand, Plaintiff claims that the purported statement was made in 2016 or 2017, the statement would have been true at the time, as that is what the Plan Documents then provided, *see supra* at 2-3, and therefore is not a possible basis for a fraud or misrepresentation claim.  Either way, the fraud and misrepresentation claims must be dismissed.

### 2.   Archegos's Trading Strategy and Risk Profile

Nor are the allegations of false statements about Archegos's trading strategy and/or risk profile sufficiently alleged to support the fraud or misrepresentation claims.  The Amended Complaint alleges, without specificity as to who said what, to whom, or when, that the "Executive Defendants" misrepresented that the Fund was "'well-hedged' and maintained large cash reserves."  (Am. Compl. ¶¶ 8, 55, 282, 302, 312.)  It contains only one allegation that identifies

Hwang as the speaker, claiming that he once said that Archegos was "well hedged" (*id*. ¶ 158). But characterizing a fund's positions as "well-hedged" or its cash reserves as "large" is not a misrepresentation of any fact, but merely an expression of opinion, and "such statements are generally considered not actionable statements of fact." *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 20-cv-2444, 2023 U.S. Dist. LEXIS 99132, at *28 (S.D.N.Y. June 7, 2023) (quoting *DH Cattle Holdings Co. v. Smith*, 195 A.D.2d 202, 208, 607 N.Y.S.2d 227, 231 (1st Dept. 1994)). Indeed, in the context of securities fraud, courts have held that "vague positive statements regarding a corporate entity's risk management strategy, asset quality, and business practices" cannot form the necessary element of reasonable reliance for a fraud claim. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) (statements that the company was "pretty confident" and "pretty positive" about renewing partnerships are non-actionable puffery and optimism); *Asay v. Penduoduo Inc.*, 2021 U.S. App. LEXIS 26176, at *8-9 (2d Cir. Aug. 31, 2021) (use of the word "strict" to describe anti-counterfeiting measures in offering documents is vague and generalized puffery); *In re EDAP TMS S.A. Secs. Litig.*, 14-cv-6069, 2015 U.S. Dist. LEXIS 121960, at *25-26 (S.D.N.Y. Sept. 14, 2015) (description of a drug as "safe and effective" was a non-actionable expression of opinion); *In re DRDGold Ltd.*, 472 F. Supp. 2d 562, 569 (S.D.N.Y. 2007) (reference to "strong balance sheet" was opinion and puffery and "not actionable as a matter of law").[11]

---

[11]   Plaintiff also alleges that Hwang told Sullivan "that Archegos was going to begin participating in block sales to secure profits and reduce risk." (Am. Compl. ¶ 161.)  Such a statement is actionable only if "there existed an intent not to perform at the time the promise was made." *MCI WorldCom Communs., Inc. v. N. Am. Communs. Control, Inc.*, 98-cv-6818, 2003 U.S. Dist. LEXIS 9212, at *25 (S.D.N.Y. June 4, 2003).  Merely alleging that Hwang said he would explore the possibility of block sales and then never consummated any such sales is insufficient to support a fraud claim because alleged falsehoods must be about facts, not promises about future events that may not come to fruition.  *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987) ("Promises of future conduct are not actionable as negligent misrepresentations."); *Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) (same for fraud).

Plaintiff's failure to meet the Rule 8 and 9 pleading standards is particularly egregious with regard to his allegations that Hwang made misrepresentations about the Fund's risk profile and/or liquidity.  Some allegations merely recite the legal standard and claim that Hwang responded to inquiries about how Archegos was managing risk in unspecified ways that were "materially false and misleading," without any allegations explaining how or why.  (Am. Compl. ¶ 149.)Plaintiff never alleges precisely what Hwang said, to whom and when.  For example, Plaintiff alleges that "Defendants" "misstate[ed] the liquidity of the Fund, misstat[ed] … the fund's risk profile and solvency, misstat[ed] the status of the leverage and margin available to the Fund, misstat[ed] the investment strategy and the risks of the strategy…"  (*Id.* ¶ 256.)Because Plaintiff does not specify exactly what was said, these claims may also be based upon general opinions about the risk of investments, and thus are not actionable, for the reasons set forth above.  *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 170.   In any event, because the Amended Complaint lacks any specific allegations about misrepresentations of fact, rather than disagreements with opinions, it fails to state a claim for fraud or misrepresentation based upon Archegos's trading strategy or risk profile. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 170; *In re DRDGold Ltd.*, 472 F. Supp. 2d at 569.

## C.   Plaintiff's Civil Conspiracy Claim (Count 18) Must Be Dismissed.[12]

Plaintiff alleges that Defendants engaged in a civil conspiracy, but it fails to allege what they conspired to do, and raises this claim as its own Count against all Defendants.  But New York does not recognize civil conspiracy to commit a tort as an independent cause of action.  *Barns & Farms Realty, LLC v. Novelli*, 82 A.D.3d 689, 691 (2d Dept. 2011) (citing cases).  Instead, a cause

---

[12]   Hwang joins in and incorporates by reference the argument in the ACM Brief concerning the intra-corporate conspiracy doctrine.  (ACM Brief at 23.)  We have not set forth that argument separately in this brief in order to avoid unnecessary duplication.

of action alleging conspiracy to commit a tort stands or falls with the underlying tort.  *Id.*; *see also*

*Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir. 1981) ("The damage for which

recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff

produced by specific overt acts.  Accordingly, a bare conclusory allegation of conspiracy does not

state a cause of action." (internal citations omitted)).  As such, Count 18 must be dismissed.

###### D.  Plaintiff's Professional Negligence/Malpractice Claim (Count 17) Must Be Dismissed.

New York recognizes a professional negligence or malpractice cause of action, but "[i]n

order to maintain a claim for professional malpractice, defendant must be a professional."  *14 LLC*

*v. J&R 240 LLC*, 653063/2019, 2020 N.Y. Misc. LEXIS 2451, at *10 (Sup Ct. New York Co. May

21, 2020).Here, however, the Amended Complaint cannot and does not allege, as a matter of law,

that Hwang is a "professional" under New York law, and accordingly, Count 17 must be dismissed.

A vocation is considered a "profession" for purposes of a claim for malpractice when it has

qualities that include "extensive formal learning and training, licensure and regulation indicating

a qualification to practice, a code of conduct imposing standards beyond those accepted in the

marketplace and a system of discipline for violation of those standards."  *Castle Oil Corp. v.*

*Thompson Pension Emp. Plans, Inc*., 299 A.D.2d 513, 514 (2d Dept. 2002).  Vocations that courts

have concluded are "professions" include architects, engineers, lawyers, and accountants, all of

whom are legally required to be licensed.  *See id.*  For example, the court in *Castle Oil* concluded

that actuaries are not "professionals" because they are not subject to licensing requirements, are

not regulated by the State or subject to a State-created disciplinary system, and are not subject to

formal educational criteria.  *Id.*; *see also Chase Scientific Research, Inc. v. NIA Group, Inc*., 96

N.Y.2d 20, 30 (2001) (insurance agents and brokers are not "professionals" for similar reasons);

*see also In re Magnesium Corp. of Am.*, 399 B.R. 722, 755 (Bankr. S.D.N.Y. 2009) (investment banking firm that served as a financial advisor did not qualify as a "professional").

Even closer to the point, this Court has previously held that plaintiffs alleging professional malpractice against hedge fund administrators failed to allege that the administrators were "professionals" because the plaintiffs had not pled the requirements of "extensive formal learning and training, licensure and regulation [ ], a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 592 F. Supp. 2d 608, 642 (S.D.N.Y. 2009) (internal citation omitted).  The same analysis applies here, where the Amended Complaint fails to allege any facts that would, even if true, establish that Hwang, as the manager/administrator of a family investment office, is a "professional."  The Amended Complaint states that "Defendants are investment bankers and professionals with years of extensive formal learning and training, and regulation, and a code of conduct imposing standards upon the profession."  (¶ 342.)  But Hwang has never been an investment banker and is not alleged to have been functioning as one here.   Moreover, Plaintiff also fails to allege that hedge fund administrators—or more accurately, managers of family offices—are subject to any specific regulation, require formal learning or training, are licensed in order to practice, or are subject to a code of conduct imposing standards beyond those accepted in the marketplace.  Courts properly grant motions to dismiss professional negligence/malpractice claims brought against defendants who do not qualify as "professionals."  *See, e.g., 14 LLC*, 2020 N.Y. Misc. LEXIS 2451, at *12 (granting motion to dismiss where defendants provided consulting services on zoning issues, but was not an engineer or architect); *Vista Food Exch., Inc. v. BenefitMall*, 138 A.D.3d 535, 537, 31 N.Y.S.3d 9, 12 (1ˢᵗ Dept. 2016) (affirming grant of motion to dismiss because human resources

consulting company did not qualify as a professional); *Pension Comm. of Univ. of Montreal Pension Plan,* 592 F. Supp. 2d at 642 (granting summary judgment on professional malpractice claims because hedge fund administrators do not qualify as professionals under New York law); *Busker on the Roof P'ship v. Warrington*, 283 A.D.2d 376, 376, 725 N.Y.S.2d 45, 46 (1st Dept. 2001) (affirming dismissal of malpractice claim because insurance brokers and agents do not qualify as professionals).  The Court should do so here as well.

### E.     Plaintiff's Tortious Interference With Contract Claim (Count 19) Must Be Dismissed.

Plaintiff's tortious interference claim must be dismissed because the Amended Complaint does not adequately plead the "third party" element of a tortious interference claim.  "Under New York law, '[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'"  *Knopf v. Phillips*, 702 Fed. Appx. 639, 641-42 (2d Cir. 2020) (quoting *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 81-82 (1996)).  Plaintiff alleges that he entered into a "valid contractual agreement with Archegos"; that Hwang was aware of that contract; and that upon the collapse of Archegos, Hwang and others "decided that Sullivan was not entitled to any deferred compensation when he left the firm," allegedly in violation of Archegos's contractual obligation.  (Am. Compl. ¶¶ 353-56.)  But under New York law, those allegations do not support a tortious interference claim against Hwang.

A "tortious interference claim may only be brought against a stranger to the third party contract [and g]enerally, employees or officers of a contracting party … are not deemed strangers to the contract."  *Netto v* Rastegar, 2012 U.S. Dist. LEXIS 136440, at *20 (S.D.N.Y. Sept. 20, 2012); *see also Friedman*, 848 F. Supp. 2d at 298 (where "the ones alleged to have interfered with

15

the contract were allegedly officers of one of the parties to that contract," they are "generally not considered third parties to the contract" for purposes of a tortious interference claim); *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 228 (S.D.N.Y. 2004) (holding that a corporate officer cannot generally be held liable for interfering in a contract between the corporation and another). Because the Amended Complaint alleges that Hwang was the "founder and principal of Archegos" and a "highly ranked Archegos executive[]" (Am. Compl. ¶¶ 30, 259), he was not a "third party" to Plaintiff's contract with Archegos for purposes of a tortious interference claim, and, accordingly, Count 19 must be dismissed as against him.

### F.   Plaintiff's Promissory Estoppel Claim (Count 16) Must Be Dismissed.

The promissory estoppel claim alleges that Plaintiff was induced to participate in the deferred compensation plan by virtue of a promise that his investment principal and subsequent profits were guaranteed. Plaintiff alleges he relied on "oral representations . . . as to how the Plan would operate, how the funds would be invested and managed, and how distributions would be paid." (Am. Compl. ¶ 333). He also claims to have relied on "various representations by the Defendants" about the potential to create a "fund of one" out of his deferred compensation. (*Id.*) Plaintiff's reliance on these representations allegedly caused him to remain at Archegos (instead of seeking other career opportunities) and to defer receipt of the maximum amounts permissible under the Plan. (*Id.* ¶¶ 331-35.)

Under New York law, "[t]o establish a claim of promissory estoppel, a plaintiff 'must demonstrate that the [defendant] made a clear and unambiguous promise, upon which the [plaintiff] reasonably relied, to its detriment.'" *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019) (quoting *Wilson v. Dantas*, 29 N.Y.3d 1051, 1062, 58 N.Y.S.3d 286, 293 (2017)).Plaintiff has not satisfied these elements.

The first fatal flaw with Plaintiff's promissory estoppel allegations is that they are entirely based upon his employment relationship. But New York law is clear that promissory estoppel is not a valid cause of action in the employment context. *Kaplan v. Continuum Health Partners, Inc.*, 107226/2010, 2011 N.Y. Misc. LEXIS 6796, at *11-12 (Sup. Ct. New York Co. Jan. 11, 2011); *Rosenberg v. Home Box Office, Inc.*, 601924/2005, 2006 N.Y. Misc. LEXIS 9418, at *29 (Sup. Ct. New York Co. Jan. 30, 2006); *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992) (citing *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 176-77, 520 N.Y.S.2d 764, 766 (1st Dept. 1987)). For example, "[a] prospective employee . . . cannot sue an employer who reneges on a job offer or other employment promise on such a theory." *Shapira v. Charles Schwab & Co.*, 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002). Nor, likewise, can an employee sue to enforce a promise of certain salary or benefits. *See Dalton*, 134 A.D.2d at 176 ("The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel.").

The Amended Complaint runs afoul of this clear law, as it alleges that Plaintiff was induced to remain employed at Archegos and participate in the employee deferred compensation program through promises that his initial investment principal and profits were guaranteed (¶¶ 331-32), as well as promises about how the program operated and how funds would be invested (¶ 333), and promises about being allowed to someday manage a "fund of one" (¶ 333). These alleged promises all relate to the terms of Plaintiff's continued employment at Archegos—in that respect, they are strikingly similar to the promises at issue in *Dalton*, where the plaintiff, like Sullivan, claimed that he remained at his place of employment due to alleged promises regarding salary and other related

17

benefits; his claims were dismissed.  As such, they all arise "in the employment context" and accordingly are not proper bases for promissory estoppel claims under New York law.

The promissory estoppel claim should also be dismissed because Plaintiff fails to plausibly allege a "clear and unambiguous promise" or "reasonable and foreseeable reliance" on such a promise.  *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir. 1986).  Although the Amended Complaint states that Plaintiff was induced to participate in the plan "by virtue of a promise" (¶ 331), nowhere does he state what precisely Hwang said or when he said it.  Further, Hwang's alleged promises that Plaintiff would "one day" be able to manage a "fund of one" (¶¶ 325, 333) are not clear and unambiguous as required to support a promissory estoppel claim, particularly because the circumstances and time frame  during which those promises were made are entirely indefinite.  *See, e.g., Monsour v. N.Y. State Office for Developmental Disabilities*, 1:13-cv-336, 2014 U.S. Dist. LEXIS 32484, at *24-25 (N.D.N.Y. Mar. 12, 2014) (dismissing promissory estoppel claim based on promise by defendant that he would find plaintiff a "suitable position" because the description of the position was too vague and the time frame in which the position would be found was indefinite); *Gambello v. Time Warner Communs., Inc.*, 186 F. Supp. 2d 209, 226 (E.D.N.Y. 2002) (dismissing promissory estoppel claim because promise that plaintiff could be elevated from director to vice president "contain[ed] no time-frame for the change in position," and the promise was only that the employee's position "could" change).  *See also Ellis v. Provident Life & Accident Ins. Co*., 3 F. Supp. 2d 399, 410 (S.D.N.Y. 1998) ("vague promises" and "vague incomplete assurances" regarding possible changes to an incentive compensation scheme cannot support promissory estoppel claim).

A third reason the promissory estoppel claim should be dismissed because the promises upon which the claim is based are, to the extent they relate to the Plan and how it worked (as

opposed to promises that Plaintiff could someday run a "fund of one"), contrary to the documents governing the investment of his deferred compensation, *see* ¶ 331 ("Sullivan continued to believe [his profits would be protected] through the entirety of the Plan, even when the Defendants revised the Plan documents to remove those protections."), and therefore Plaintiff cannot claim to have reasonably relied upon them. *See, e.g., Kleinberg v. Radian Group, Inc.*, 240 F. Supp. 2d 260, 262 (S.D.N.Y. 2002) (if the terms of an unambiguous contract are inconsistent with the statements that form the basis of the promissory estoppel claim, the plaintiff could not have reasonably relied on those statements); *Ibt Media v. Pragad*, 652277/2022, 2022 N.Y.L.J. LEXIS 2665, at *6-7 (Sup. Ct. New York Co. Jan. 3, 2023) (dismissing promissory estoppel claim because the alleged promise "contradict[ed] the plain language" of the written agreement).

## III.   All Claims Against Hwang Must Be Dismissed Because They Are Premised Either On An Alleged Oral Promise Made by Him Or Upon ACM's Alleged Status As Hwang's "Alter Ego."

### A.   The Statute of Frauds Precludes All Claims Premised On Alleged Oral Promises by Hwang (Counts 5, 8, 11, 12, 13, 15, 16).

The Amended Complaint states that the Mandatory Plan Contracts and the Elective Plan Contracts "govern this action" (¶ 265) and that Plaintiff is entitled to the full value of his total Deferral Payment Accounts "[p]er the Plan Contracts." (¶ 269).  However, the Plan Documents cited in the Amended Complaint do not create any personal liability for Hwang.  To the contrary, they unequivocally state that only ACM could be responsible for employees' deferred compensation.  And Plaintiff's claims based on alleged contradictory oral promises are, in any event, barred by the Statute of Frauds.

None of the Plan Documents suggest Hwang would be personally liable to Archegos employees for their deferred compensation.  To the contrary, the Bonus Letters stated that "Any Bonus payment referred to herein is the sole obligation of the Company…" [ECF 99-1, 99-2 and

96-6.]  Likewise, the 2018-2020 Elective Plan Contracts (incorporated by reference at ¶ 96) §

6.1(b) provide, in relevant part, that: "This Plan is executed on behalf of the Company by an officer

of the Company as such and not individually.  Any obligation of the Company hereunder shall be

an unsecured obligation of the Company, as applicable and not of any other person."  [ECF 96-1

to 96-3.]  Thus, far from making Hwang personally liable, the Plan Documents state that only

Archegos had obligations under the Plan.

Even if the Amended Complaint included specific allegations of instances in which Hwang

orally promised to be personally liable for Plaintiff's Deferred Payments (and, as noted above,

there is no such specific allegation), that would not be enough for the pleading to survive a motion

to dismiss, as any such verbal promise would be unenforceable under the New York Statute of

Frauds.  NY GOB §5-701 (requiring promises be in writing if "it is a special promise to answer

for the debt, default or miscarriage of another person").  Because Archegos had the "sole

obligation" to the employees, any alleged promise by Hwang would be to answer for the debt or

default of another (Archegos), and would thus be covered by the Statute of Frauds.  *See, e.g.*,

*Dahan v. Weiss*, 120 A.D.3d 540 (2d Dept. 2014) (allegation that a grantee of real property was to

repay grantor's mortgage debt to plaintiff was barred by statute of frauds).

Plaintiff's causes of action based on breach of fraud-related claims (Counts 5, 8, 11-13 and

15) and promissory estoppel (Count 16) are likewise precluded by the Statute of Frauds.  *See, e.g.,*

*MacKay v. Paesano*, 68232-14, 2018 N.Y. Misc. LEXIS 474, at *14-15 (Sup. Ct. Suffolk Co. Feb.

6, 2018) (plaintiff's fraud claim is barred by Statute of Frauds where it is based on nothing more

than a misrepresentation about defendant's intent or ability to honor an oral agreement); *Martin*

*Greenfield Clothiers, Ltd. v. Brooks Bros. Grp.*, 175 A.D.3d 636, 637-38 (2d Dept. 2019) (Statute

of Frauds bars promissory estoppel claim where, as here, Plaintiff failed to allege he suffered

unconscionable injury in reliance on an oral promise).  Plaintiff cannot plead around the statute of frauds by alleging fraud or other causes of action that, at bottom, all revolve around the written contractual plan documents and claims that Hwang somehow orally promised something different than what was stated in those documents.

Finally, apart from the requirements of the Statute of Frauds, oral promises also cannot vary the terms of an alleged ERISA plan, as Plaintiff contends the Plan is (*see* Counts 1-3, 5). *Ladouceur v. Credit Lyonnais*, 584 F.3d 510, 512 (2d Cir. 2009) (rejecting an alleged breach of fiduciary duty when the alleged breach was an oral representation that purported to change an ERISA benefit plan); *Perrera v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002) (holding that an oral statement purporting to alter the terms of an ERISA benefit plan was insufficient to give rise to a claim for promissory estoppel); *cf., Zydel v. Dresser Indus.*, 764 F. Supp. 277 (W.D.N.Y. 1991) (written pension plan governed by ERISA could not be modified by employer's alleged policy and practice of guaranteeing the greater of union or management pension benefits upon retirement to former union members who accepted promotion to management positions, as this constituted an impermissible oral modification).  For the reasons set forth in ACM's motion to dismiss, Mr. Hwang agrees that Plaintiff does not plead viable ERISA claims, but even if he did, they would have to be dismissed, as a matter of law, to the extent that they rely upon oral representations.

### B.   Plaintiff's "Alter Ego" Pleading Fails as a Matter Of Law.

In Count Twenty, Plaintiff pleads a cause of action for "Alter Ego Liability," alleging that "Hwang, Archegos and the Foundation should be treated as a single entity for liability purposes, and Hwang can be held personally liable for acts taken in a corporate capacity by himself and the other members of his senior management team."  (Am. Compl. ¶ 367.)  But this Count must be

dismissed because "alter ego" or "veil piercing" is not a separate, stand-alone cause of action under New York law. *Music Mix Mobile LLC v. Newman*, 592 B.R. 292, 299 (Bankr. S.D.N.Y. 2018).

Further, Plaintiff has failed to allege facts that would support the extraordinary remedy of extending liability for any other count to Hwang. "Those seeking to pierce a corporate veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked …" *TNS Holdings, Inc. v. MKI Securities. Corp.,* 92 N.Y.2d 335, 339 (1998); *see also Am. Fed. Title Corp. v. GFI Mgmt. Servs.,* 716 F. App'x 23, 28 (2d Cir. 2017) (piercing the corporate veil is an "extraordinary remedy"). That is, the alter ego/veil piercing doctrine requires first, that the would-be "alter ego" completely dominated the properly-named entity, such that the corporate form was illusory and, second, that such domination was specifically used to perpetrate some "wrong" or "injustice." *Morris v. N.Y.S. Dep't of Taxation and Fin.,* 82 N.Y.2d 135, 141 (1993); *Am. Fed. Title Corp.,* 716 F. App'x at 27 (requiring a "fraud or wrong"). *See also Apex Mar. Co. v. OHM Enters.,* 10-cv-8119, 2011 U.S. Dist. LEXIS 35707, at *8 (S.D.N.Y. Mar. 30, 2011) ("purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard. A complaint that consists of purely conclusory allegations unsupported by factual assertions will not survive a motion for judgment on the pleadings." (internal quotations omitted)).[13]

---

[13]    Plaintiff's veil piercing claims could be governed by Delaware law, where Archegos and the Foundation are organized, or New York law, where they operated, but there is no material difference between the two. *See, e.g., Irwin & Leighton, Inc. v. W.M. Anderson Co.,* 532 A.2d 983, 989 (Del. Ch. 1987) (under Delaware law, the inquiry initially focuses on whether "those in control of a corporation" did not "treat [] the corporation as a distinct entity"; and, if they did not, the court then seeks "to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general term of reproach in mind.").

Here, Plaintiff has not alleged facts that could, even if proven, meet the requirement that the corporate form was illusory.[14]  And although veil piercing is a fact-intensive inquiry, many courts have dismissed such claims pursuant to Rule 12(b)(6) where the complaint does not allege specific facts that, if proven, could support that remedy under applicable state law.  *See*, *e.g.*, *Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed. Appx. 13, 15-16 (2d Cir. 2014) (affirming dismissal); *CSX Transp.*, 2011 U.S. Dist. LEXIS 74625, at *9; *Allison*, 14-cv-1618, 2014 U.S. Dist. LEXIS 143517, at *16 (S.D.N.Y. Sept. 12, 2014); *Bentivoglio v. Even Cardio Grp., Inc.*, 18-cv-2040, 2019 U.S. Dist. LEXIS 206381, at *13-18 (S.D.N.Y. Nov. 27, 2019).

In *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* the Second Circuit set out the indicia of the kind of domination that can support veil piercing under New York law:  (1) failure to follow corporate formalities; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arm's length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and (10) whether the corporation had property that was used by other of the corporations as if it

---

[14]     Plaintiff will not ultimately be able to meet the second prong of the veil-piercing test—that the alleged domination was specifically used to perpetrate some "wrong" or "injustice"—such that Plaintiff will survive a motion for summary judgment. *See, e.g., Ocampo v. 455 Hospitality LLC*, 14-cv-9614, 2021 U.S. Dist. LEXIS 178875, at *32-33 (S.D.N.Y. Sept. 20, 2021) (granting summary judgment as to veil piercing claims). However, on this Rule 12(b)(6) motion, Hwang moves for dismissal of Plaintiff's alter ego claims because he so plainly fails to meet the pleading standard with respect to the first prong—that ACM's corporate form was illusory.

were its own.  933 F.2d 131, 139 (2d Cir. 1991).  The Amended Complaint alleges almost none of these things about Archegos and Hwang.  At most, it charges that Hwang was the founder and that he "dominated" Archegos and the Foundation (Am. Compl. ¶ 362), including that, "intermingling funds between the Foundation, Archegos and Hwang himself."  (*Id*. ¶ 365.)

But these allegations are insufficient to support alter ego liability, particularly given that Archegos was a closely-held corporation and a family office owned by Hwang.  "[C]orporations always do what their owners tell them to do. . . . If the fact that a corporation served its owner's interests were enough to establish a wrongful 'domination' of the corporation, then the corporate form would never be respected."  *Music Mix Mobile LLC*, 592 B.R. at 304.  That is, being the sole owner, manager or decision-maker for Archegos does not support veil-piercing because "[i]n the case of closely-held corporations, these facts are not uncommon, and often create a scenario where a sole principal dominates corporate decision-making.  As such, these facts are neutral in the context of closely-held corporations and are not enough to pierce the corporate veil."*In re Stamou*, 8-09-78895, 2013 Bankr. LEXIS 227, at *30 (Bankr. E.D.N.Y. Jan. 17, 2013).  Indeed, by its nature, a "family office" is created to invest and manage a family's assets and there would simply be no point to ever incorporate a family office if merely alleging that it was dominated by the family justified piercing the corporate veil.[15]

The vague "on information and belief" allegation that Hwang "intermingled" Archegos funds with his own or "moved" funds is equally insufficient.  "Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal

---

[15]     A family office is "a company . . . that (1) Has no clients other than family clients . . . (2) Is wholly owned by family clients and is exclusively controlled (directly or indirectly) by one or more family members and/or family entities; and (3) Does not hold itself out to the public as an investment adviser."  17 CFR § 275.202(a)(11)(G)-1(b).

notice pleading standard." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (dismissing a "veil piercing" claim because it failed to allege sufficient facts to support the theory and concluding that "[p]laintiff's reliance on cases noting that veil-piercing is a very fact-specific analysis" was "misplaced").  Simply "reciting elements of the veil-piercing test, without supporting facts, constitute legal conclusions" that "cannot support a veil-piercing claim." *Apace Communs., Ltd. v. Burke*, 522 F. Supp. 2d 509, 521 (W.D.N.Y. 2007) (dismissing complaint pursuant to Fed. R. Civ. P. 12(c)).  Additionally, Plaintiff alleges no facts regarding his claim that Hwang "intermingled" or "moved" Archegos funds; merely reciting the term "intermingled" does not come close to satisfying his pleading burden.  *Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Invs. Inc.*, 117 A.D.3d 447, 450, 985 N.Y.S.2d 54, 57 (1st Dept. 2014) (granting motion to dismiss because "conclusory allegations of … intermingling of assets … without additional facts, are insufficient to pierce the corporate veil).

## CONCLUSION

For the foregoing reasons, Defendant Hwang respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Dated:   November 21, 2023

By: /s/ Lawrence S. Lustberg
Lawrence S. Lustberg
Thomas R. Valen

**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
973-596-4731
llustberg@gibbonslaw.com
tvalen@gibbonslaw.com

*Attorneys for Defendant*
*Sung Kook ("Bill") Hwang*

25