UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENDAN SULLIVAN<br><br>    Plaintiff,<br><br>    v.<br><br>SUNG KOOK ("BILL") HWANG, ARCHEGOS CAPITAL MANAGEMENT, LP, ARCHEGOS CAPITAL MANAGEMENT, LLC, THE GRACE AND MERCY FOUNDATION, INC., ARCHEGOS FUND LP, EWM LLC, d/b/a EWM GLOBAL, ANDY MILLS, DIANA PAE, BRIAN JONES, SCOTT BECKER, and PATRICK HALLIGAN,<br><br>    Defendants. | No.: 1:22-cv-05675 (PG) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SUNG KOOK ("BILL") HWANG'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

                              **Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

    I.     The FAC Fails Rules 8 and 9, and Therefore the Fraud and Misrepresentation-based Claims (Counts 8, 11, 12, 13, 15) Must Be Dismissed. ........................................................................................................... 1

    II.    The FAC Does Not Allege the Existence of a Fiduciary Duty (Counts 7 and 14). ................................................................................................................ 3

    III.   The FAC Does Not Allege a Professional Negligence/Malpractice Claim (Count 17). .................................................................................................. 4

    IV.   The FAC Does Not Adequately Allege Promissory Estoppel (Count 16) ............... 5

    V.    The Statute of Frauds Bars Counts 5, 8, 11, 12, 13, 15, and 16 .............................. 6

    VI.   Plaintiff's Alter Ego Pleading Fails as a Matter Of Law. ........................................ 8

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Thani v. Hanke*,
  20-cv-4765, 2021 WL 1895033 (S.D.N.Y. May 11, 2021) ........................................................3

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  351 F. Supp. 2d 79 (S.D.N.Y. 2004) ........................................................................................4

*Apex Mar. Co. v. OHM Enters.*,
  10-cv-8119, 2011 WL 1226377 (S.D.N.Y. Mar. 30, 2011) ......................................................8

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
  80 A.D.3d 293 (1st Dep't 2010) ..............................................................................................3

*Bais Yaakov of Spring Valley v. Educ. Testing Servs.*,
  251 F. Supp. 3d 724 (S.D.N.Y. 2017) ......................................................................................2

*Bentivoglio v. Event Cardio Group*,
  18-cv-20402011 WL 6341130, at *4-6 (S.D.N.Y. Nov. 27, 2019) .........................................10

*Boelter v. Hearst Comms., Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ......................................................................................5

*Chase Scientific Research, Inc. v. NIA Group, Inc.*,
  96 N.Y.2d 20 (2001) ................................................................................................................4

*Childers v. N.Y. & Presbyterian Hosp.*,
  36 F. Supp. 3d 292 (S.D.N.Y. 2014) ........................................................................................3

*Cordius Trust v. Kummerfeld*,
  153 F. App'x 761 (2d Cir. 2005) ..............................................................................................8

*People ex rel. Cuomo v. Merkin*,
  26 Misc. 3d 1237(A), 907 N.Y.S.2d 439 (Sup. Ct. 2010) ........................................................3

*Deutsch v. Kroll Assocs., Inc.*,
  2-cv-2892, 2003 WL 22203740 (S.D.N.Y. Sept. 23, 2003) .....................................................6

*Dimsey v. Bank of N.Y.*,
  600391/2006, 2006 N.Y. Misc. LEXIS 3811 (Sup. Ct. New York Co. Aug. 24,
  2006) ....................................................................................................................................4, 5

*Drummond v. Akselrad*,
  2023 WL 3173780 (S.D.N.Y. May 1, 2023) .........................................................................5, 6

*Feitshans v. Kahn*,
   6-cv-2125, 2007 WL 2438411 (S.D.N.Y. Aug. 24, 2007) ...................................................... 9

*Gangemi v. Arch Oncology, Inc.*,
   22-cv-7961, 2023 WL 3687729 (S.D.N.Y. May 26, 2023) .................................................... 5

*Health Acquisition Corp. v. Program Risk Mgmt.*,
   105 A.D.3d 1001 (2d Dep't 2013) .......................................................................................... 4

*Leather v. United States Trust Co. of New York*,
   279 A.D.2d 311 (N.Y. App. Div. 2001) .................................................................................. 5

*Martin Greenfield Clothiers, Ltd. v. Brooks Bros. Grp.*,
   175 A.D.3d 636 (2d Dep't 2019) ............................................................................................ 7

*Music Mix Mobile LLC v. Newman*,
   592 B.R. 292 (Bankr. S.D.N.Y. 2018) .................................................................................... 8

*New York v. P.A. Indus., Inc.*,
   17-cv-01146, 2022 WL 4226041 (E.D.N.Y. Sept. 13, 2022) ................................................. 7

*Physicians Mut. Ins. Co. v. Greystone Serv. Corp., Inc.*,
   7-cv-10490, 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) .................................................... 10

*Pollak v. Moore*,
   85 A.D.3d 578 (1st Dep't 2011) .............................................................................................. 7

*Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Invs. Inc.*,
   117 A.D.3d 447 (1st Dep't 2014) .......................................................................................... 10

*Senior Health Ins. Co. of PA. v. Beechwood Re Ltd.*,
   345 F. Supp. 3d 515 (S.D.N.Y. 2018) .................................................................................... 3

*Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*,
   17-cv-2505, 2021 WL 1108666 (E.D.N.Y. Mar. 23, 2021) .................................................... 6

*In re Stamou*,
   2013 WL 209473 (Bankr. E.D.N.Y. Jan. 17, 2013) ................................................................ 9

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157 (2d Cir. 2021) .................................................................................................... 3

*TNS Holdings, Inc. v. MKI Securities. Corp.*,
   92 N.Y.2d 335 (1998) ............................................................................................................. 8

*United States v. Funds Held in Name or for Ben. of Wetterer*,
   899 F. Supp. 1013 (E.D.N.Y. 1995) ....................................................................................... 9

*Windward Bora LLC v. Lungen*,
  22-cv-4743, 2023 WL 9100340 (S.D.N.Y. Aug. 29, 2023) ....................................................... 1

*World Trade Centers Assoc., Inc. v. Port Authority of N.Y. and N.J.*,
  15-cv-7411, 2018 WL 6628840 (S.D.N.Y. Dec. 18, 2018) ....................................................... 9

*Zeising v. Kelly*,
  152 F. Supp. 2d 335 (S.D.N.Y. 2001) ....................................................................................... 7

**Statutes**

ERISA ................................................................................................................................................ 8

N.Y. G.O.B. § 5-701 ......................................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 8 ..................................................................................................... 1

Federal Rule of Civil Procedure 9(b) ................................................................................................. 1

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................... 8

**PRELIMINARY STATEMENT**[1]

Plaintiff's First Amended Complaint ("FAC") is almost entirely lacking in specific factual allegations, but it is loaded with legally irrelevant invective. And Plaintiff's Opposition Brief ("Opp.") fails to address the FAC's fatal deficiencies. Like the FAC itself, the Opposition Brief consistently fails to explain what actionable conduct each defendant is alleged to have committed, but instead clusters the defendants together, committing the same group-pleading error that plagued the FAC. It ignores governing New York cases that strictly impose pleading requirements for Plaintiff's claims, requirements with the FAC fails to satisfy. And it fails to justify the FAC's alter ego claim against Mr. Hwang, pointing only to a handful of conclusory or benign allegations that are legally insufficient to state a legal claim. For these reasons, the FAC must be dismissed.[2]

**ARGUMENT**

**I.     The FAC Fails Rules 8 and 9, and Therefore the Fraud and Misrepresentation-based Claims (Counts 8, 11, 12, 13, 15) Must Be Dismissed.**

The FAC fails both basic notice-pleading requirements and Rule 9(b)'s heightened fraud-pleading requirements because it groups six defendants under the label "Executive Defendants" and repeatedly (94 times) uses that phrase, despite the law requiring that Plaintiff both identify an ostensibly fraudulent statement's maker and state where and when the statement was made. Hwang Br. at 4-6. Plaintiff now tries to water down Rule 8 by arguing that it "does not require the

---

[1] Mr. Hwang joins and incorporates by reference all of the arguments set forth in the briefs filed on behalf of ACM, the Fund, and the Individual Defendants, and on behalf of the Foundation. All capitalized terms bear the meanings given in Mr. Hwang's moving brief ("Hwang Br."). All citations omit internal citations and quotations unless otherwise noted.

[2] Plaintiff does not address Mr. Hwang's arguments that the tortious interference claim (Count 19) and the civil conspiracy claim (Count 18) fail as a matter of law, and therefore has waived any argument to the contrary. *See, e.g.*, *Windward Bora LLC v. Lungen*, 22-cv-4743, 2023 WL 9100340, at *3 n.4 (S.D.N.Y. Aug. 29, 2023) (failure to raise an argument in an opposition brief is a waiver).

1

plaintiff to identify each of the defendants by name each time the complaint makes an allegation that applies equally to all." Opp. 37 (quoting *Bais Yaakov of Spring Valley v. Educ. Testing Servs.*, 251 F. Supp. 3d 724, 744 (S.D.N.Y. 2017)).  Yet the very case Plaintiff cites embraces the core principle, of which the FAC runs afoul, that a complaint cannot make "generalized allegations about broad conduct with no explanation as to why any particular defendant was responsible for the conduct." *Bais Yaakov* at 745. *See also* Hwang Br. 4-5.

Plaintiff attempts to obscure the FAC's defects by noting that there are some allegations in the FAC that specifically refer to Mr. Hwang.  Opp. 37-38.  Of course, *some* allegations in the FAC specifically refer to Mr. Hwang.  But to satisfy the pleading requirements, the FAC would have to properly specify why a "particular defendant was responsible for the [fraudulent] conduct." *Bais Yaakov*, 251 F. Supp. 3d at 745.  And the paragraphs to which Plaintiff cites as referring "specific[ally] to Hwang" fail to attribute any fraudulent statements to him, and in many instances do not refer to Mr. Hwang at all, instead repeatedly referencing the Executive Defendants collectively. *See, e.g.*, FAC ¶¶ 150 (referring to Hwang, Mills, Jones, and Pae); 151, 156-57, 159-62, 163, 165, 171, 177, 180-82 ("Executive Defendants"); 154-55, 158, (Hwang, Mills, Pae, Halligan, and Jones); 166 (Jones); 174 (not specifying representation's maker); 176 (Becker and Halligan); 195 (Hwang and Mills); 196 (Mills, Hwang, and Pae); 197 (Hwang and Pae).[3]

Stripped of improper group pleading, what remains in the FAC cannot support Plaintiff's fraud claims.  Only two paragraphs to which Plaintiff points refer to a specific representation made by Mr. Hwang, and both of those allege only general representations that he intended to or was in

---

[3] This lumping together of individual defendants continues in the Opposition, which repeatedly refers to the "defendants" as a whole, uses phrases like "Hwang, Mills, Pae, Halligan, and Jones misrepresented to Sullivan . . . ," Opp. 13, and only occasionally mentions specific individuals, as the law requires.

2

the process of "de-risking" the portfolio. FAC ¶¶ 163, 169. But as the moving brief explains, characterizing a portfolio's risk level or strategy is, at worst, non-actionable puffery—not fraud at all. *See* Hwang Br. 10-12 (citing *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) ("vague positive statements regarding a corporate entity's risk management strategy, asset quality, and business practices" cannot form the basis of a fraud claim)). The fraud and misrepresentation claims must therefore be dismissed.

## II.  The FAC Does Not Allege the Existence of a Fiduciary Duty (Counts 7 and 14).

Nor does the FAC adequately allege that Mr. Hwang owed Plaintiff a fiduciary duty, as merely reciting the words "fiduciary duty" is insufficient. *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) ("[C]onclusory allegations . . . are insufficient to state a claim of a fiduciary duty."). The FAC alleges that Mr. Hwang and Plaintiff had, at most, an employee profit-sharing agreement; Plaintiff's "investments" in the fund were nothing more than the agreed-upon allocation of a portion of his compensation into the fund. As explained in the moving brief, such agreements about compensation structure or profit sharing between employer and employee do not, as a matter of law, create a fiduciary duty. Hwang Br. at 8-9. Plaintiff also argues that Mr. Hwang was Plaintiff's "investment advisor," but this claim is inconsistent with the allegations of the FAC: Plaintiff never "owned" a portion of Archegos's investment fund, but was only entitled to a future share of the fund's profits. FAC ¶¶ 103-05. And the cases that Plaintiff cites in support of a supposed fiduciary duty all involve a professional financial advisor who assisted in creating a personalized financial plan.[4] Plaintiff alleges that he was merely promised a

---

[4] *See* Opp. 47-48 (citing *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 80 A.D.3d 293, 306 (1st Dep't 2010) (investment account manager); *Senior Health Ins. Co. of PA. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 524 (S.D.N.Y. 2018) (investment manager); *People ex rel. Cuomo v. Merkin*, 26 Misc. 3d 1237(A), 907 N.Y.S.2d 439 (Sup. Ct. 2010) (investment manager); *Al Thani*

future share of Archegos's overall profits—a situation that far more closely reflects a profit-sharing or compensation agreement than it does an investment advisor-advisee relationship. The fiduciary-duty counts must therefore be dismissed.

### III. The FAC Does Not Allege a Professional Negligence/Malpractice Claim (Count 17).

As explained in the moving brief, professional negligence claims under New York law apply to a narrow set of professions, of which Mr. Hwang was, undisputedly, not a member. For example, although Mr. Hwang is not an investment adviser, Plaintiff now appears to contend that Mr. Hwang qualifies as one.[5]  Hwang. Br. 13-15. In so contending, Plaintiff relies on dicta in a footnote in *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 99 n.21 (S.D.N.Y. 2004), for the proposition that "[t]here is no reason why financial advisers . . . should be exempt from liability for negligent performance of their professional duties." But this is simply not the law; to the contrary, financial advisers are not subject to professional negligence claims because they lack the hallmarks of the professions actually governed by the applicable law: a state-created licensing, regulatory, or disciplinary system and formal educational criteria. *See, e.g., Health Acquisition Corp. v. Program Risk Mgmt.*, 105 A.D.3d 1001, 1004 (2d Dep't 2013); *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 30 (2001). At least one New York state court case therefore has criticized the dictum in *Am. Tissue*, emphasizing that it did not constitute a binding statement of New York law and noting that it only "*implie[d]* that financial advisers may be viewed as professionals." *Dimsey v. Bank of N.Y.*, 600391/2006, 2006 N.Y. Misc. LEXIS 3811, at *10 (Sup. Ct. New York Co. Aug. 24, 2006) (emphasis in original). In any event,

---

*v. Hanke*, 20-cv-4765, 2021 WL 1895033, at *18 (S.D.N.Y. May 11, 2021) (contract providing for fiduciary relationship)).

[5] The FAC itself alleges instead that Mr. Hwang is an "investment banker." FAC ¶ 342. Plaintiff now appears to abandon that false contention, as his Opposition does not mention it.

4

New York state court decisions have repeatedly held that investment advisors do not qualify as professionals.  *See, e.g.*, *Leather v. United States Trust Co. of New York*, 279 A.D.2d 311, 312 (N.Y. App. Div. 2001); *Dimsey*, 2006 WL 3740349, at *3-4 ("BNY in its capacity as financial adviser is not considered a professional for the purpose of professional malpractice.").  These cases supply the governing rule of decision under the *Erie* doctrine and mandate dismissal.  *Boelter v. Hearst Comms., Inc.*, 192 F. Supp. 3d 427, 443 (S.D.N.Y. 2016) (federal courts sitting in diversity apply state substantive law).

## IV.    The FAC Does Not Adequately Allege Promissory Estoppel (Count 16).

Promissory estoppel is not a valid cause of action in the employment context, particularly when the plaintiff sues to enforce a promise of certain salary or benefits.  Hwang Br. 16-19 (citing cases).  Relying on a single federal case, Plaintiff argues that promissory estoppel claims are not "categorically barred" in the employment context.  Opp. 49 (quoting *Drummond v. Akselrad*, 2023 WL 3173780, at *8 (S.D.N.Y. May 1, 2023)).  But as the numerous cases in the moving brief show, by far the greater weight of precedent holds that employment-related promissory estoppel claims are barred.  *See Gangemi v. Arch Oncology, Inc.*, 22-cv-7961, 2023 WL 3687729, at *4 (S.D.N.Y. May 26, 2023) ("[S]everal courts within the Second Circuit have held that New York does not recognize promissory estoppel as a valid cause of action in the employment context.").

In any event, *Drummond* itself requires rejection of Plaintiff's promissory estoppel claim.  It notes that when a CEO "claimed that he was entitled to a long-term incentive plan . . . that he had discussed with the board but that had not been included in his written contract," he could not claim "reasonable reliance upon the promise of the [plan], in part[] because he was a sophisticated executive who should have known to contract for such a bonus in writing rather than rely on

5

representations." *Drummond*, 2023 WL 3173780, at *8.[6]  Plaintiff's claim that he was orally promised the ability to manage a "fund of one" is precisely the sort of claim precluded by *Drummond*: a gloss on an employment contract that Plaintiff "should have known to contract for" in writing.  *See also, e.g.*, *Deutsch v. Kroll Assocs., Inc.*, 2-cv-2892, 2003 WL 22203740, at *3 (S.D.N.Y. Sept. 23, 2003) (dismissing claim for failure to pay promised severance, wages, and benefits); *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 17-cv-2505, 2021 WL 1108666, at *5-6 (E.D.N.Y. Mar. 23, 2021) (estoppel claim barred "when no promise arises that is separate from an employment relationship").  The promissory estoppel claim must therefore be dismissed.

## V.  The Statute of Frauds Bars Counts 5, 8, 11, 12, 13, 15, and 16.

Plaintiff's estoppel-based, fraud-based, and negligent misrepresentation claims against Mr. Hwang all must be dismissed for the additional reason that they are all subject to and barred by the Statute of Frauds.  Hwang Br. 19-21.  While Plaintiff replies that Mr. Hwang is liable under the Archegos Plan contracts, which have been reduced to writing, Opp. 62-63, that is a *non sequitur*, since the claims subject to dismissal on this basis are not for Archegos' alleged breach of that contract, but rather for the purported failure of Mr. Hwang to personally assume responsibility for Archegos's alleged breach.  *See* Hwang Br. 20.[7]

---

[6] Plaintiff turns *Drummond* on its head, arguing that it bars employment-related promissory estoppel only in a "narrow set of circumstances."  Opp. 49.  On the contrary—*Drummond* in fact only *permits* employment-based promissory estoppel in a narrow set of circumstances: for instance, where an employee alleges he was "induced to perform duties outside of his role," and "alleges retaliation for his report of misconduct when the employer's handbook promised that there would be no retaliation." 2023 WL 3173780, at *8.  No such circumstance applies here.

[7] The FAC does not allege any breach of contract claim against Mr. Hwang.  Count 6, the FAC's sole breach of contract claim, is only brought against the Archegos entities. FAC ¶¶ 264-75.

Plaintiff also argues that the Archegos Plan "could be performed within one year, because employees could terminate their employment at any time," and that this somehow renders the Statute of Frauds inapplicable here. Opp. 63 (citing N.Y. G.O.B. § 5-701). But again, the putative "agreement" that would have to satisfy the Statue of Frauds would be some agreement between Mr. Hwang and Plaintiff, *see* NY. G.O.B. § 5-701 (promises to answer for another's debts must be in writing); whether or not the *Plan* (which is, of course, already in writing) can be performed within one year is irrelevant, as the alleged promises upon which the claims against Mr. Hwang that are at issue here are not claims under the Plan but rather alleged (but unspecified) agreements by Mr. Hwang to answer for Archegos's debts; Plaintiff fails to address this at all.

Plaintiff also argues that "Plaintiff's fraud claims (based in tort) rely on the Executive Defendants['] oral statements and are not subject to the statute of frauds." Opp. 63 n.27 (citing *New York v. P.A. Indus., Inc.*, 17-cv-01146, 2022 WL 4226041, at *6 (E.D.N.Y. Sept. 13, 2022)[8]). But Plaintiff simply fails to address the many state-court cases clearly holding that such claims are, in fact, subject to the Statute of Frauds. *See, e.g.*, *Pollak v. Moore*, 85 A.D.3d 578, 579 (1st Dep't 2011) (negligent misrepresentation claims are subject to Statute of Frauds); *Martin Greenfield Clothiers, Ltd. v. Brooks Bros. Grp.*, 175 A.D.3d 636, 637-38 (2d Dep't 2019) (promissory estoppel claim dismissed as violating Statute of Frauds). Counts 5, 8, 11, 12, 13, 15, and 16 must therefore be dismissed.

---

[8] *P.A. Indus.* states only that fraudulent inducement is not subject to the Statute of Frauds. *Id.* This is wrong as a matter of law; *Zeising v. Kelly*, 152 F. Supp. 2d 335 (S.D.N.Y. 2001), which *P.A. Indus.* itself cites, holds that the Statute of Frauds applies to fraudulent inducement claims that are "merely attempts to dress up [a] breach of contract claim by alleging that the [defendants] had no intention to perform" a contract. *Id.* at 346-47. That applies here. *See* Hwang Br. at 20-21.

**VI.     Plaintiff's Alter Ego Pleading Fails as a Matter Of Law.**

Mr. Hwang's moving brief shows that the FAC fails to state a claim for piercing the corporate veil because even if all of the few specific facts alleged were true, they would not make Mr. Hwang Archegos's "alter ego."  Hwang Br. 21-25.  In response, Plaintiff relies on inadequate conclusory allegations to try to avoid the "heavy burden" that must be met to plead a veil-piercing claim.[9]  *TNS Holdings, Inc. v. MKI Securities. Corp.,* 92 N.Y.2d 335, 339 (1998); *see also Apex Mar. Co. v. OHM Enters.*, 10-cv-8119, 2011 WL 1226377, at *3 (S.D.N.Y. Mar. 30, 2011) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard. A complaint that consists of purely conclusory allegations unsupported by factual assertions will not survive a motion for judgment on the pleadings.").[10]  While Plaintiff broadly argues that alter ego claims are unsuited for resolution on a motion to dismiss, he ignores the basis for the motion in *this* suit: numerous cases have granted Rule 12(b)(6) motions when a complaint fails to allege facts that, if true, could support an alter ego finding.  *See* Hwang Br. at 23 (collecting cases).  That is the FAC's fatal flaw.

Plaintiff's Opposition cannot make up for the fact that essentially all of his alter ego allegations are either legal conclusions wrapped in factual garb or banal descriptions of a typical family office.  Plaintiff's description of Archegos as Mr. Hwang's "personal fiefdom," FAC ¶ 53,

---

[9] Plaintiff also argues that the pleading burden should be lessened in ERISA cases.  But as explained in Archegos's brief, ERISA does not govern this action. Even if it did, any loosened veil-piercing standard would only apply to ERISA claims; Plaintiff cites no case importing a lessened alter ego standard for ERISA claims onto common-law claims.  *See* Opp. 54; *see also* Foundation Mov. Br. at 20 (distinguishing between ERISA and common-law veil-piercing).

[10] Plaintiff nowhere addresses the Defendants' argument that "alter ego liability" is not a separate cause of action under New York law.  Hwang Br. at 21-22 (citing *Music Mix Mobile LLC v. Newman*, 592 B.R. 292, 299 (Bankr. S.D.N.Y. 2018)); *see also Cordius Trust v. Kummerfeld*, 153 F. App'x 761, 762-63 (2d Cir. 2005) (holding that a veil-piercing claim is not a separate cause of action independent of the underlying claim against the corporation).

while rhetorically colorful, is legally meaningless. And his reliance on Mr. Hwang's status as "the architect behind Archegos's investment strategy" and "direct[or of] the risky strategy that caused the firm's demise," Opp. at 56 (citing FAC ¶¶ 138-93), would make many, if not every, owner of an investment fund its alter ego. Plaintiff's extreme position is particularly dangerous given the fact that "courts in this district are especially hesitant to find a disregard of the corporate form when closely-held corporations are involved." *Feitshans v. Kahn*, 6-cv-2125, 2007 WL 2438411, at *5 (S.D.N.Y. Aug. 24, 2007); *see also World Trade Centers Assoc., Inc. v. Port Authority of N.Y. and N.J.*, 15-cv-7411, 2018 WL 6628840, at *14 (S.D.N.Y. Dec. 18, 2018) ("complete control" over a "closely-held corporate entity is not uncommon and thus represents a neutral factor in the alter ego analysis"); *In re Stamou*, 2013 WL 209473, at *11 (Bankr. E.D.N.Y. Jan. 17, 2013) ("In the case of closely-held corporations, these facts [that is, an individual being the sole decision maker for a company] are not uncommon, and often create a scenario where a sole principal dominates decision-making. As such, these facts are neutral in the context of closely-held corporations and are not enough to pierce the corporate veil.").

Regarding the ten indicia of domination that the Second Circuit has held make up a viable veil-piercing claim, *see* Hwang Br. 23, Plaintiff gives them the back of his hand, contending that he "cannot be expected to make a trial-ready showing of alter ego status." Opp. 57.[11] But as the cases above show, a plaintiff must *plead* sufficient factual allegations of domination to survive a motion to dismiss. And a plaintiff whose complaint fails to plead such facts will not be permitted to proceed to trial. *See United States v. Funds Held in Name or for Ben. of Wetterer*, 899 F. Supp. 1013, 1020 (E.D.N.Y. 1995) (*Passalacqua* factors are "the criteria needed to pierce the corporate

---

[11] Plaintiff also implies that Mr. Hwang relies on "affidavits and exhibits" in support of his motion. Opp. 57-58. This implication is simply false.

9

veil"); *Bentivoglio v. Event Cardio Group*, 18-cv-2040201l WL 6341130, at *4-6 (S.D.N.Y. Nov. 27, 2019) (dismissing defendant from case because complaint failed to adequately allege facts regarding veil-piercing factors).  Ultimately, the FAC has none of the requisite specific factual allegations, such as examples of Archegos failing to follow corporate formalities or being inadequately capitalized, or of Mr. Hwang using corporate funds for personal purposes.[12]  In short, Plaintiff has failed to sufficiently allege that Archegos—as alleged, a family-office fund with numerous corporate officers and directors, millions of dollars in annual revenue, and relationships with multiple sophisticated investment banks—"had no existence of its own." *Physicians Mut. Ins. Co. v. Greystone Serv. Corp., Inc.*, 7-cv-10490, 2009 WL 855648, at *4 (S.D.N.Y. Mar. 25, 2009).  The alter ego claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Hwang respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Dated:   March 22, 2024                                By:  /s/ *Lawrence S. Lustberg*
                                                            Lawrence S. Lustberg
                                                            Thomas R. Valen
                                                            Andrew J. Marino
                                                            **GIBBONS P.C.**
                                                            One Gateway Center
                                                            Newark, NJ 07102
                                                            973-596-4731

                                                            *Attorneys for Defendant*
                                                            *Sung Kook ("Bill") Hwang*

---

[12] While the FAC does vaguely say funds were "intermingled" or "moved," Plaintiff does nothing to address the law that merely stating, without specific factual details, that a defendant "intermingled" funds is insufficient. *See Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Invs. Inc.*, 117 A.D.3d 447, 450 (1st Dep't 2014) (granting motion to dismiss because "conclusory allegations of . . . intermingling of assets . . . without additional facts, are insufficient to pierce the corporate veil").