**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BRENDAN SULLIVAN,

                       Plaintiff,

      v.

SUNG KOOK ("BILL") HWANG, ARCHEGOS
CAPITAL MANAGEMENT, LP, ARCHEGOS
CAPITAL MANAGEMENT, LLC, THE GRACE
AND MERCY FOUNDATION, INC., ARCHEGOS
FUND LP, EWM LLC, d/b/a EWM GLOBAL,
ANDY MILLS, DIANA PAE, BRIAN JONES,
SCOTT BECKER, and PATRICK HALLIGAN,

                    Defendants.

Case No. 1:22-cv-05675-PGG

*Oral Argument Requested*

---

**MEMORANDUM OF LAW OF**
**THE GRACE AND MERCY FOUNDATION, INC.**
**IN SUPPORT OF ITS MOTION TO DISMISS**

---

**LOWENSTEIN SANDLER LLP**
1251 Avenue of The Americas
New York, NY 10020
212.262.6700
*Counsel for The Grace And Mercy Foundation, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................1

LEGAL STANDARD AND ALLEGED FACTS ...................................................2

    A.    The Foundation is a Longstanding, Pre-Existing 501(c)(3) Organization...............3

    B.    Plaintiff was Employed by Archegos and Had No Relationship with the Foundation. .......................................................................................3

    C.    The Foundation Bears No Responsibility for Plaintiff's Loss................................3

    D.    The Foundation's Operations. ..............................................................5

ARGUMENT ...........................................................................................6

I.    The Amended Complaint Fails to State an ERISA Claim Against The Foundation............6

    A.    The Amended Complaint Fails to Name the Foundation as an "ERISA Defendant." ............................................................................6

    B.    The Foundation is Not An Alter Ego Under ERISA Law. ......................................7

        1.    Different Business Purposes .........................................................8

        2.    Different Equipment ..................................................................9

        3.    Different Customers...................................................................9

        4.    Different Operations .................................................................9

        5.    Different Management ...............................................................11

        6.    Different Supervision ...............................................................11

        7.    Different Ownership .................................................................12

    C.    The Amended Complaint Also Fails to Allege the Required Elements for Any ERISA Claim Against the Foundation (Counts One to Five). ...............................12

II.    The Complaint Fails to State a Common-Law Claim Against the Foundation. ................14

    A.    ERISA Preempts All of Plaintiff's State-Law Counts. ..........................................15

    B.    Breach-of-Contract Claim (Count Six)................................................................15

    C.    Breach-of-Fiduciary Duty Claims (Counts Seven and Fourteen)..........................16

    D.    Fraud Claims (Counts Eight, Eleven, Twelve, and Thirteen) ...............................16

    E.    Negligent-Misrepresentation Claim (Count Fifteen) ...........................................18

    F.    Promissory Estoppel Claim (Count Sixteen) ......................................................18

    G.    Professional-Malpractice Claim (Count Seventeen)............................................19

    H.    Civil-Conspiracy Claim (Count Eighteen)..........................................................19

    I.    Tortious-Interference Claim (Count Nineteen).....................................................19

J.      Alter-Ego Claim, Once Again (Count Twenty).......................................................20

CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ................................................................................................15

*Anschutz Corp. v. Merrill Lynch & Co.,*
690 F.3d 98 (2d Cir. 2012) ......................................................................................18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................2

*Besen v. Farhadian,*
195 A.D.3d 548 (1st Dep't 2021) ............................................................................16

*Canzona v. Atanasio,*
118 A.D.3d 837 (2d Dep't 2014) .............................................................................15

*Cencom Cable Income Partners II, Inc. v. Wood,*
752 A.2d 1175 (Del. Ch. 1999) ...............................................................................20

*Cortes v. 21st Century Fox Am., Inc.,*
752 Fed. Appx. 69 (2d Cir. 2018) ...........................................................................17

*De Sole v. Knoedler Gallery, LLC,*
974 F. 2d 274 (S.D.N.Y. 2013) .................................................................................2

*Holmes v. Allstate Corp.,*
No. 11 Civ. 1543, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) ........................6, 14

*In re JMK Constr. Grp. Ltd.,*
502 B.R. 396 (Bankr. S.D.N.Y. 2013) ..............................................................20, 22

*Krys v. Pigott,*
749 F.3d 117 (2d Cir. 2014) ....................................................................................18

*Lerner v. Fleet Bank, N.A.,*
459 F.3d 273 (2d Cir. 2006) ...............................................................................2, 17

*Lihli Fashions Corp. v. NLRB,*
80 F.3d 743 (2d Cir. 1996) .................................................................................8, 12

*Mandala v. NTT Data,*
975 F.3d at 208 ........................................................................................................14

*Mason Tenders Dist. Council of Greater N.Y. v. Fortune Interiors Dismantling Corp.*,
No. 12 Civ. 4253, 2015 WL 4503630 (S.D.N.Y. July 23, 2015) ............................................11

*MEE. Pirie's, Inc. v. Keto Ventures, LLC*,
151 A.D.3d 1363 (3d Dep't 2017) ..........................................................................................17

*N.Y. State Teamsters Conf. Pension and Ret. Fund ex rel. Bulgaro v. Doren Ave. Assocs., Inc.*,
321 F. Supp. 2d 435 (N.D.N.Y. 2004) ......................................................................................7

*Naughright v. Weiss*,
826 F. Supp. 2d 676 (S.D.N.Y. 2011) .....................................................................................19

*Newspaper Guild of N.Y., Local No. 3 of the Newspaper Guild, AFL-CIO v. NLRB*,
261 F.3d 291 (2d Cir. 2001) .....................................................................................................8

*Pegram v. Herdich*,
530 U.S. 211 (2000) ................................................................................................................13

*Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*,
215 A.D.3d 699 (2d Dep't 2023) ............................................................................................19

*Salgo v. N.Y. Concrete Corp.*,
447 F. Supp. 3d 136 (S.D.N.Y. 2020) ............................................................................ passim

*Schroeder v. Pinterest Inc.*,
133 A.D.3d 12 (1st Dep't 2015) .............................................................................................18

*Soter Techs., LLC v. IP Video Corp.*,
523 F. Supp. 3d 389 (S.D.N.Y. 2021) ...............................................................................21, 22

*Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*,
906 F. Supp. 2d 202 (S.D.N.Y. 2012) ......................................................................................2

*TNS Holdings, Inc. v. MKI Secs. Corp.*,
680 N.Y.S.2d 891 (1998) ........................................................................................................20

*Tri-Star Lighting Corp. v. Goldstein*,
151 A.D.3d 1102 (2d Dep't 2017) ..........................................................................................16

*Triemer v. Bobsan Corp.*,
70 F. Supp. 3d 375 (S.D.N.Y. 1999) .......................................................................................20

*U.S. Bank Nat'l Ass'n v. Kahn Prop. Owner, LLC*,
206 A.D.3d 851 (2d Dep't 2022) .......................................................................................19, 20

*William Wrigley Jr. Co. v. Waters*,
890 F.2d 594 (2d Cir. 1989) ...................................................................................................20

**STATUTES**

28 U.S.C. § 6033 ................................................................................................10

29 U.S.C. § 1002 ................................................................................................13

29 U.S.C. § 1102 ................................................................................................12

29 U.S.C. § 1106 ................................................................................................13

29 U.S.C. § 1132 ................................................................................................14

**RULES**

Fed. R. Civ. P. 8 .............................................................................................7, 21

Fed. R. Civ. P. 9 .............................................................................................2, 21

Fed. R. Civ. P. 12 ...............................................................................................1

**OTHER AUTHORITIES**

Eric L. Johnson & Kristina A. Rasmussen, *The Intersection of Family Office and Philanthropy*, 152 Tax Notes 537, 546 (2016) ............................................................................10

Defendant The Gracy and Mercy Foundation, Inc. (the "Foundation") respectfully submits this memorandum of law in support of its motion to dismiss, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), all claims against the Foundation in the Amended Complaint dated November 23, 2022, (ECF No. 101), of plaintiff Brendan Sullivan ("Plaintiff").

## PRELIMINARY STATEMENT

It is one thing for a former employee to claim that he is owed money under his deferred compensation plan with his former employer. But what is wrong—indeed, frivolous—is for Plaintiff, a former Managing Director of Archegos Capital Management ("Archegos"), to throw in claims against (and inflict legal expense on) a nonprofit foundation recognized under Section 501(c)(3) of the Internal Revenue Code—the Foundation—that had *no connection* with Plaintiff or his employment, let alone with the Archegos deferred compensation plan (the "Plan") at issue. Throwing around a conclusory phrase like "alter ego" is no substitute for alleging sufficient facts to state a cause of action that can survive a motion to dismiss under FRCP 12(b)(6). Indeed, the phrase "alter ego" is not even an independent cause of action under New York law, and nowhere does Plaintiff's Amended Complaint even *allege* that: (1) Plaintiff was ever employed by the Foundation; (2) the Foundation ever sponsored or managed the Plan at issue; and/or (3) the Foundation's assets were ever used to fund Archegos or the Plan.

To the contrary, the Amended Complaint actually *contradicts* any such claims. Plaintiff alleges that he worked for Archegos, not the Foundation, and that other defendants, not the Foundation, managed the Plan. Moreover, Plaintiff can only allege that other defendants "wanted to" or "intended to" direct assets from the Foundation to Archegos; he admits, however, that they *never did*. (Am. Compl. ¶ 238.) In short, the Amended Complaint fails to allege that the Foundation (as opposed to others) did anything unlawful to Plaintiff.

Although Plaintiff struggles to try and find some way to lump the Foundation, an IRS-recognized nonprofit, with the other defendants, the Amended Complaint is devoid of any connection between Plaintiff and the Foundation (which never employed him) or between the Foundation and the Plan at issue (which the Foundation never sponsored or managed).  The Amended Complaint falls far short of even alleging facts to state any viable cause of action *by Plaintiff against the Foundation*.  Plaintiff's claims against the Foundation should be dismissed so that the Foundation's funds can continue to be used for grants to charities—not to deal with Plaintiff's baseless claims against a Foundation that owed him *no legal duty at all*.

## LEGAL STANDARD AND ALLEGED FACTS

While the facts in the Amended Complaint must be deemed true for purposes of a motion to dismiss, a complaint that tries to lump all the defendants together—and does not specify what each defendant allegedly did wrong—fails as a matter of law.  "A complaint is inadequately pled . . . [if it] does not provide factual allegations sufficient 'to give [each] defendant fair notice of what the claim is and the grounds upon which it rests.'"  *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 294 (S.D.N.Y. 2013) (Gardephe, J.) (citations omitted).  A complaint that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' or '"naked assertion[s]' devoid of 'further factual enhancement'"" will fail.  *Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*, 906 F. Supp. 2d 202, 215 (S.D.N.Y. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).  Moreover, to comply with FRCP 9(b), all allegations of fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).

### A.    The Foundation is a Longstanding, Pre-Existing 501(c)(3) Organization.

Plaintiff's Amended Complaint concedes that the Foundation is a charitable foundation headquartered in New York that is qualified under Section 501(c)(3) of the Internal Revenue Code. (*See* Am. Compl. ¶ 33.)  Sung Kook (Bill) Hwang and his wife Becky Hwang established the Foundation in 2006—long *before* Archegos was started in 2013.  (*Id.* ¶¶ 3, 125.)[1]  Even Plaintiff concedes that "[s]ince its inception, the Foundation [has] distributed millions of dollars in grants to dozens of primarily religious-affiliated institutions and nonprofits" and "donated between $10-24 million a year" to these educational institutions and charities.  (*Id.* ¶ 125.)  Thus, it is impossible for the Foundation to have been established solely as an "alternative cash vehicle" for Archegos or Hwang, as Plaintiff alleges.  (*See id.* ¶ 59.)

### B.    Plaintiff was Employed by Archegos and Had No Relationship with the Foundation.

Plaintiff alleges that he joined Archegos in 2014 as an analyst and director and was later promoted to a managing director role.  (*Id.* ¶ 52.)  He does not allege that he ever had any position at, or any involvement with, the Foundation.  Instead, Plaintiff alleges only that unspecified "Archegos staff" assisted the Foundation with "administrative functions, and resources to operate the Foundation . . . ."  (*Id.* ¶ 59.)  Plaintiff does not allege that he dedicated **any** of his own time or resources to the Foundation while employed at Archegos, and the Amended Complaint fails to allege any individual connection between Plaintiff and the Foundation.

### C.    The Foundation Bears No Responsibility for Plaintiff's Loss.

Plaintiff's claims against Archegos and the other defendants arise out of the alleged Plan in which Plaintiff participated while employed at Archegos.  (*Id.* ¶¶ 1, 6.)  Plaintiff alleges that

---

[1] As detailed on its website, www.graceandmercy.org, the Foundation "supports the poor and oppressed, and helps people learn, grow, and serve" through grants to other non-profit organizations.

beginning in 2016, all employees selected as "eligible" for the Plan, including Plaintiff, began to defer portions of their generous bonus compensation for reinvestment in the Archegos fund with the goal of accruing even larger returns. (*See, e.g., id.* ¶¶ 6–8, 81–82, 86.) Plaintiff further alleges that the "Executive Defendants" (Bill Hwang, Patrick Halligan, Brian Jones, Andy Mills, Scott Becker, and Diana Pae)—*not* the Foundation—pressured him into participating in the Plan for their own benefit and the benefit of Archegos generally. (*See, e.g., id.* ¶¶ 8–9, 66, 81–82, 86.) For many years, Archegos "enjoyed success in a strong market," (*id.* ¶ 4), but in early 2021, Archegos collapsed as a result of significant overleveraging, and the reinvested funds were ultimately lost, (*see id.* ¶¶ 1, 4).

The Amended Complaint does not (and cannot) allege that the Foundation (as opposed to other defendants): (i) was involved in any aspect of the Plan's administration (such as performing any of the fiduciary duties of a plan administrator); (ii) contributed any funding to the Plan; or (iii) had any role in inducing Plaintiff's participation in the Plan. Plaintiff even admits that only Archegos employees participated in the Plan, (*id.* ¶ 81), and that funds were never transferred from the Foundation to Archegos, (*id.* ¶ 238). Further, Plaintiff's allegation that Archegos and the Foundation "regularly intermingled finances," (*id.* ¶ 58), is flatly contradicted by the allegations that follow. "Intermingling" implies movement of assets back and forth between Archegos and the Foundation, but Plaintiff only alleges that unspecified defendants "*wanted* to direct assets from the Foundation back to the Fund" and "*attempted* to raid the Foundation's assets," (*id.* ¶ 238 (emphasis added)), but not that any of these things *actually happened*. To the contrary, the Amended Complaint acknowledges that these other defendants never proceeded because they "were advised such an action was illegal." (*Id.*)

### D.     The Foundation's Operations.

While the Amended Complaint is rife with conclusory allegations of "overlapping" operations at Archegos and the Foundation, (*id.* ¶ 130), the actual allegations support how the Foundation followed (and certainly did not disregard) corporate formalities.   The Amended Complaint concedes that the Foundation was duly formed as a Delaware corporation and duly recognized as a 501(c)(3) corporation years *before* Archegos existed.  (*Id.* ¶¶ 3, 33, 125.)   The Foundation also had its own separate floor of office space going back to 2019 and kept and filed its own "tax records" (Form 990s).  (*Id*. ¶¶ 125, 129.)

The Amended Complaint is most noteworthy for what it does *not* allege.   Nowhere, for example, does Plaintiff dispute that, at all relevant times, the Foundation maintained its own bank accounts; had its own Board of Directors; held board meetings separately from Archegos; and employed its own officers and employees.   Nor does Plaintiff dispute that the Foundation has been granting tens of millions of dollars a year to dozens of charities since it was founded in 2006.  (*Id.* ¶ 125.)

Other than bare conclusions, the Amended Complaint alleges only that: (i) the Foundation's former Co-President, Christopher McPadden, was simultaneously a Senior Advisor (not an officer) at Archegos and (ii) the *spouse* of the Foundation's other Co-President, Sumi Kim, was a consultant (again, not officer) at Archegos.  (*Id.* ¶ 132.)  Moreover, instead of alleging that Archegos and the Foundation had the same officers at the same time, the Amended Complaint merely alleges that Andy Mills, the current co-Chairman of the Foundation, and Diana Pae, the current Global Chief Operating Officer of the Foundation, used to work at Archegos.  (*Id.* ¶¶ 34–35.)  None of this, of course, is remotely illegal.

Simply put, Plaintiff's Amended Complaint fails to allege *any* wrongful acts by the Foundation, let alone allege any *facts* (as opposed to improper group pleading) that could make

the Foundation liable to a non-employee (Plaintiff) under an employee-compensation Plan of Plaintiff's employer (Archegos) that the Foundation never (even allegedly) started, offered, or managed.

## ARGUMENT

**I. THE AMENDED COMPLAINT FAILS TO STATE AN ERISA CLAIM AGAINST THE FOUNDATION.**

### A. The Amended Complaint Fails to Name the Foundation as an "ERISA Defendant."

In terms of the Amended Complaint's ERISA counts, Plaintiff alleges that the "ERISA Defendants are all fiduciaries of the Plan under ERISA . . . and therefore owed a fiduciary duty to the Plan, Sullivan, and each Plan participant." (Am. Compl. ¶ 221.) Remarkably, however, the Amended Complaint does not identify who the "ERISA Defendants" actually are. The Foundation is nowhere identified as an "ERISA Defendant"—let alone alleged to have assumed *any* duties whatsoever for Archegos' alleged ERISA plan, or itself to have taken any actions in violation of ERISA.[2]

All of Plaintiff's ERISA claims against the Foundation must be dismissed on this ground alone, since "group pleading" allegations are insufficient as a matter of law. *See Holmes v. Allstate Corp.*, No. 11 Civ. 1543 (LTS) (DF), 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012) (citation omitted) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."). Plaintiff repeatedly asserts the conclusory allegation that "the Foundation . . . operates as Archegos' alter ego" and is therefore "equally liable." (*See, e.g.*, Am. Compl. ¶ 231.) This statement utterly fails to identify the Foundation as

---

[2] The Foundation takes no position at this time as to whether the Plan was even subject to ERISA, given that the Foundation had no connection with the formation or management of the Plan.

an "ERISA Defendant" or identify what provision of ERISA the Foundation supposedly violated. Thus, all ERISA claims against the Foundation fail as a matter of law and should be dismissed.

### B.    The Foundation is Not An Alter Ego Under ERISA Law.

Even if the Amended Complaint stated an ERISA claim against the Foundation (and it does not), it still would not allege the rare situation in which an "alter ego" claim could be relevant in the ERISA context: "to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" *Salgo v. N.Y. Concrete Corp.*, 447 F. Supp. 3d 136, 144 (S.D.N.Y. 2020) (citation omitted).  "Ordinarily, an alter ego claim arises in such a context where two companies are not concurrently performing the same functions, and one of the companies is instead *replacing* the other." *N.Y. State Teamsters Conf. Pension & Ret. Fund ex rel. Bulgaro v. Doren Ave. Assocs., Inc.*, 321 F. Supp. 2d 435, 446 (N.D.N.Y. 2004) (citation omitted).

Here, the Amended Complaint nowhere alleges that the Foundation was created to evade Archegos' ERISA obligations.  This would be a chronological impossibility, since the Foundation came first, having been formed and begun making charitable grants approximately seven years before Archegos even existed.  Moreover, since the Amended Complaint concedes that the Foundation has made tens of millions of dollars in grants annually to dozens of charitable institutions, (*see* Am. Compl. ¶ 125), the Amended Complaint does not (and cannot) allege that the Foundation is just a "sham transaction or technical change in operations." *Salgo*, 447 F. Supp. 3d at 144.  Plaintiff, who has no connection whatsoever with the Foundation, is hardly in any position to second-guess the Foundation's recognition (going back to 2006 and ever since) as a valid charitable foundation under federal law.

Since Plaintiff's ERISA claims fail as a matter of law, the Court need not go further in terms of the deficient allegations in the Amended Complaint.  The improper "group pleading" of

unspecified "ERISA Defendants," as well as the absence of any allegation that the Foundation was just a "sham transaction or technical change in operations," alone mandate dismissal of any ERISA claims against the Foundation.  However, just in the alternative, we discuss the "alter ego" factors in the ERISA context—most or all of which are missing here.

When determining whether two entities are alter egos in the ERISA context, the Court "must consider whether the two entities have overlapping or 'substantially identical': (1) business purposes; (2) equipment; (3) customers; (4) operations; (5) management; (6) supervision, or (7) ownership." *Id.* (quoting *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 748 (2d Cir. 1996)).  ERISA factors can also include "an 'anti-union animus or an intent to evade union obligations.'" *Id.* at 145 (citation omitted).  However, the Amended Complaint does not allege that Archegos (or the Foundation) ever had any unionized employees or obligations.

### 1.     Different Business Purposes

"Two entities may be found to have a common business purpose when, for example, the principal work they perform is the same, particularly when that work is performed in the same geographic area." *Id.*  This factor is "significant." *See, e.g.*, *Lihli Fashions Corp.*, 80 F.3d at 748–49 (finding insubstantial evidence of alter ego where two companies were commonly owned and had identical management but had completely different business purposes).  For example, in *Newspaper Guild of New York, Local No. 3 v. NLRB*, the Second Circuit affirmed a National Labor Relations Board ("NLRB") decision that two companies were not alter egos, relying primarily on a finding of "separate business purposes."  261 F.3d 291, 299 (2d Cir. 2001).  In analyzing this factor, the NLRB "focused chiefly on the companies' strategic business goals (which differed) rather than on the nature of the industrial operation (which was very similar)." *Id.*

Here, the Amended Complaint fails to allege that the Foundation and Archegos had the same business purpose.  To the contrary, it details how the Foundation was formed and made grants

as a charitable foundation many years before Archegos, an investment firm, even existed. (*See* Am. Compl. ¶¶ 3, 125.) The allegations in the Amended Complaint thus fail to meet this factor.

### 2.    Different Equipment

Courts also consider whether alleged alter egos "share equipment, tools, supplies, or other resources in connection with their operations." *Salgo*, 447 F. Supp. 3d at 145 (citation omitted). In considering this factor, courts have found that "the shared equipment factor did not support an alter ego relationship where, '[a]side from office space at [one company], which [was] used on occasion to conduct [the other company's] business, the only "equipment" that [the two companies were] alleged to have both used is a few stray tools and some wood." *Id.* at 146 (quoting *Anderson v. Union City Mirror & Table Co.*, No. 16-CV-6012 (JMF), 2018 WL 565727, at *3 (S.D.N.Y. Jan. 25, 2018)).

Here, the Amended Complaint acknowledges that Archegos and the Foundation operated on different floors since 2019, (Am. Compl. ¶ 129), before Plaintiff claims he was entitled to benefits under the Plan. No common use of items like "equipment" or "supplies" is even alleged. There is also nothing remotely illegal about some former employees of Archegos (a for-profit) providing some financial or other support to the Foundation (a nonprofit). The allegations in the Amended Complaint fail to meet this factor.

### 3.    Different Customers

Plaintiff makes no allegation that Archegos and the Foundation shared "common customers." Moreover, as a 501(c)(3) nonprofit, the Foundation has no customers at all. The Amended Complaint fails to meet this factor.

### 4.    Different Operations

In terms of operations, the Amended Complaint does not dispute that the Foundation's bank accounts, books and records, boards, and employees were separate, not shared. Indeed, by law,

nonprofits qualified under Section 501(c)(3) of the Internal Revenue Code are required to file separate (not consolidated) financial returns.[3]

Although Plaintiff makes some conclusory allegations without specifics, such as that Mr. Hwang "intermingle[ed] his *personal* funds with those of the Foundation and Archegos," (Am. Compl. ¶ 196 (emphasis added)), Mr. Hwang was free to donate his personal funds to the Foundation or invest with Archegos however he chose. Moreover, as previously noted, the Amended Complaint only alleges that some of the other defendants "wanted" or "attempted" to direct assets from the Foundation back to the Fund," but in fact never did. (*Id.* ¶ 238.) The Amended Complaint also never alleges that the operations of the Foundation (a grantmaking nonprofit) and Archegos were substantially identical.

In addition, the Amended Complaint alleges that Archegos was a "family office," (*e.g.*, *id.* ¶ 49), and it is common practice (and hardly illegal) for a family's charitable foundation to save operating expenses—and thereby have more to grant to charities—by sharing office space or other overhead items. *See, e.g.*, Eric L. Johnson & Kristina A. Rasmussen, *The Intersection of Family Office and Philanthropy*, 152 Tax Notes 537, 546 (2016) ("In practice, it is common for families to house their private foundation in close proximity to their family office."). Indeed, "[o]ften, family offices and private foundations share not only space but also supplies and equipment." *Id.* Again, the Amended Complaint fails to allege facts that would make the Foundation a "sham" or "alter ego," as opposed to a recognized charitable foundation that existed before and after Archegos was in the investment business.

---

[3] *See* 28 U.S.C. § 6033(b) (requiring annual filings of Forms 990).

### 5.    Different Management

In terms of management, once again, the Amended Complaint does not dispute that the Foundation was founded long before Archegos, (Am. Compl. ¶¶ 3, 125); that the Foundation has a separate board; that this board holds separate meetings; or that the Foundation makes real grants to real charities—a very different business from what Archegos did.

Further, it is well established that an individual's "move from one company to another does not make the companies alter egos." *Salgo*, 447 F. Supp. 3d at 149. Again, Plaintiff has not pleaded sufficient grounds for holding one corporation, the Foundation, liable to a non-employee (Plaintiff) for a Plan to which the Foundation was *never* a sponsor or contracting party.

### 6.    Different Supervision

Although Plaintiff alleges that "many Archegos employees had parallel or related titles at the Foundation," (Am. Compl. ¶ 132), the Amended Complaint identifies only one individual, Christopher McPadden, "who was Co-President of the Foundation and also a Senior Advisor at Archegos," (*id.*). However, Plaintiff does not allege that this individual was a supervisor (as opposed to an advisor) at Archegos. *See, e.g.*, *Salgo*, 447 F. Supp. 3d at 149 ("The fact that former . . . employees were *subsequently* employed in similar roles . . . with no evidence of overlap or simultaneous duties, is insufficient as a matter of law to support a finding of an alter ego relationship."); *see also Mason Tenders Dist. Council of Greater N.Y. v. Fortune Interiors Dismantling Corp.*, No. 12 Civ. 4253 (PAC), 2015 WL 4503630, at *4 (S.D.N.Y. July 23, 2015) ("[T]hat several [company] employees subsequently worked at [the alleged alter ego company] is not dispositive.").

Moreover, because the Foundation was and is a regulated nonprofit, only the Foundation's board (not Archegos' board) supervised how the Foundation's assets were used. Again, the Amended Complaint fails to allege facts that would nullify the Foundation's pre-existing corporate

identity or make a 501(c)(3) Foundation responsible for Plaintiff's benefits from his Plan with Archegos.

### 7.      Different Ownership

As to common ownership, Plaintiff admits that the Foundation is "technically distinct from Hwang and Archegos . . . ."  (Am. Compl. ¶ 58.)  Although the Amended Complaint alleges that that Archegos was owned by one person, (*id.* ¶ 1), it acknowledges that "[t]he Foundation was created in 2006 by [Mr.] Hwang and his wife," (*id.* ¶ 125).  Of course, as a nonprofit, the Foundation has no owners at all.  Again, the allegations of the Amended Complaint fail to meet this factor.

In short, based on the relevant factors, the Amended Complaint fails to allege facts (as opposed to conclusions) supporting "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations" as required to prevail under the ERISA alter ego doctrine.  *Lihli Fashions*, 80 F.3d at 748 (citation omitted).

### C.      The Amended Complaint also Fails to Allege the Required Elements for Any ERISA Claim Against the Foundation (Counts One to Five).

On top of its many other ERISA deficiencies—including not even specifying the "ERISA Defendants" or alleging the basics of an "alter ego" claim under ERISA—the Amended Complaint fails even to allege, at least against the Foundation, other necessary elements of its ERISA counts. For example, Count One is for breach of fiduciary duty under ERISA, a term of art for Plaintiff's Plan that does *not* apply to the Foundation.

Under 29 U.S.C. § 1102(a)(2), a "fiduciary" is limited to those (i) "named in the plan instrument" or (ii) "identified as a fiduciary" pursuant to "a procedure specified in the plan," either by (a) "a person who is an employer or employee organization with respect to the plan" or (b) "by

such an employer and such an employee organization acting jointly."  Moreover, a person can only be "a fiduciary with respect to a plan" to the extent the person has or exercises "discretionary authority" regarding the management, investment, or administration of the plan.   *Id.* § 1002(21)(A).  "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan' . . . ."  *Pegram v. Herdich*, 530 U.S. 211, 222 (2000) (citing 29 U.S.C. § 1002(21)(A)(i)–(iii) ("[T]he threshold question is . . .  whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

Here, there is no allegation that the Foundation either: (i) was named as a fiduciary of the Plan under its plan documents; or (ii) exercised discretionary authority or control over the management, investment, or administration of Archegos' Plan.  For example, there is no allegation that the Foundation managed any of the assets of Archegos' Plan.  Thus, the Amended Complaint fails to state a claim against the Foundation for breach of fiduciary duties under ERISA.

Similarly, Count Two, pled under 29 U.S.C. § 1106, only covers certain "prohibited" transactions or transfers *by ERISA plan fiduciaries*.  The Amended Complaint does not allege any facts that would make the Foundation a fiduciary of the Plan at all, let alone any particular transaction by the Foundation that could have violated this statute.

Likewise, Count Three, alleging a wrongful denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B), does not state a claim against the Foundation.  There is no allegation that the Foundation denied Plaintiff anything.  This statute also only applies when the plan participant is suing to recover "benefits due to him under the terms of his plan," *id.*, but Plaintiff alleges no provision of his Plan that made anyone other than his employer (not the Foundation) responsible for his benefits.

-13-

Count Four, failure to provide a Summary Plan Disclosure under 29 U.S.C. § 1132(c) and other ERISA provisions, also has no application to the Foundation. These ERISA requirements apply to the administrator of the plan at issue. The Foundation is not even alleged to be an administrator of the Plan, nor to have agreed to undertake any duties for that Plan.

The final ERISA count, Count Five, for alleged equitable estoppel/false misrepresentation under 29 U.S.C. § 1132(a)(3), also fails as to the Foundation because no representation (let alone misrepresentation) by the Foundation to Plaintiff is even alleged. Plaintiff again makes a blanket claim that "Defendants" made misrepresentations to Plaintiff, but identifies no alleged statement by the Foundation to Plaintiff. This claim fails as a matter of law in the absence of an allegation of "affirmative conduct" by the Foundation. *See Holmes*, 2012 WL 627238, at *9.

For all these reasons, Plaintiff's baseless ERISA claims against the Foundation must be dismissed. To avoid dismissal, Plaintiff must "assert [enough] nonconclusory factual matter . . . to nudge [his] claim[] across the line from conceivable to plausible . . . ." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (citation omitted). The Amended Complaint fails to do so as to the Foundation.

## II.   THE COMPLAINT FAILS TO STATE A COMMON-LAW CLAIM AGAINST THE FOUNDATION.

Plaintiff's common-law claims against the Foundation fail for many of the same reasons as his ERISA claims—and for many others. Once again, Plaintiff fails to overcome his basic problems: he was never employed by the Foundation, the Foundation had no fiduciary or other responsibility for the plan, and no unlawful conduct by the Foundation is even alleged. Even worse, Plaintiff's common-law claims against the Foundation fail on other legal grounds.

### A.    ERISA Preempts All of Plaintiff's State-Law Counts

Given that Plaintiff *himself* alleges that the Plan is governed by ERISA, ERISA preempts Plaintiff from pursuing common-law claims for the same benefits.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").  The Complaint is based *entirely* on a theory that Plaintiff is owed benefits under the Plan, and if ERISA applies to the Plan, then it preempts all of Plaintiff's state-law claims against the Foundation.

### B.    Breach-of-Contract Claim (Count Six)

Even if not preempted, Plaintiff's contract claim against the Foundation is patently frivolous because it does not allege that the Foundation had any contract with Plaintiff at all, let alone that the Foundation breached any provision of the contract (the Plan) at issue.  To establish a claim for breach of contract under New York law, the plaintiff must prove: (1) "the existence of a contract," (2) "the plaintiff's performance pursuant to the contract," (3) "the defendant's breach of his or her contractual obligations," and (4) "damages resulting from the breach."  *Canzona v. Atanasio*, 118 A.D.3d 837, 838 (2d Dep't 2014) (citations omitted).

The Amended Complaint does not even attempt to allege that a contract ever existed between Plaintiff and the Foundation.  The Foundation is included in Count Six based solely on the conclusory statement that the Foundation "operates as Archegos' alter ego" and is "equally liable to Sullivan on Count Six."  (Am. Compl. ¶ 275.)  However, just as the Amended Complaint fails to state an alter ego claim under ERISA (discussed *supra*), it likewise fails to state an alter-ego claim under common law (discussed *infra*).

## C.      Breach-of-Fiduciary Duty Claims (Counts Seven and Fourteen)

Counts Seven and Fourteen of the Amended Complaint assert claims against the Foundation and other defendants for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, respectively.   Once again, Plaintiff repeats that the Foundation supposedly is "equally liable" because it "operates as Archegos' alter ego."   (Am. Compl. ¶¶ 286, 319.) However, this is just more of the same.

To establish a claim for breach of fiduciary duty under New York law, the plaintiff must prove the (1) "defendant owed [the plaintiff] a fiduciary duty," (2) defendant committed misconduct," and (3) plaintiff "suffered damages caused by that misconduct." *Besen v. Farhadian*, 195 A.D.3d 548, 549–50 (1st Dep't 2021) (citation omitted).   Similarly, to state a claim for aiding and abetting breach of fiduciary duty, the plaintiff must show (1) "a breach by a fiduciary of obligations to another," (2) that "the defendant knowingly induced or participated in the breach," and (3) that the "plaintiff suffered damage as a result of the breach." *Tri-Star Lighting Corp. v. Goldstein*, 151 A.D.3d 1102, 1107 (2d Dep't 2017) (citations omitted).   The second element of knowing inducement or participation is only met if, among other things, the defendant "rendered 'substantial assistance' to the primary violator."   *Id*. (citation omitted).   Nowhere, however, do these counts allege any facts (let alone specific facts) that created *any* duty (let alone a fiduciary duty) of the Foundation to Plaintiff.   And once again, no substantial assistance or wrongful act of the Foundation is alleged in the Amended Complaint.

## D.      Fraud Claims (Counts Eight, Eleven, Twelve, and Thirteen)

Counts Eight, Eleven, Twelve, and Thirteen of the Amended Complaint allege various fraud-related claims against all defendants, apparently including the Foundation.   Of course, for each defendant, the plaintiff alleging fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (citation omitted).

Here, however, Plaintiff fails to allege any misrepresentation by the Foundation, let alone do so with the required particularity, such as who from the Foundation said what to Plaintiff, and when, and where. Plaintiff does not allege that the Foundation made *any* of the alleged specific misrepresentations to which the Amended Complaint refers, *e.g.*, "misstating the liquidity of the Fund." (*See* Am. Compl. ¶ 288.) Indeed, Plaintiff instead states that "[t]he Defendants" who allegedly made misrepresentations "are all highly ranked Archegos executives and the company itself," (*id.* ¶ 291); that is, not the Foundation.

The constructive fraud claim (Count Eleven) is equally lacking as to the Foundation, since (among other things) it depends on the defendant in question having "a fiduciary or confidential relationship warranting the trusting party to repose his or her confidence" in the defendant. *MEE. Pirie's, Inc. v. Keto Ventures, LLC*, 151 A.D.3d 1363, 1364 (3d Dep't 2017) (citations omitted). Plaintiff does not allege facts to support any such relationship between Plaintiff and the Foundation, which was not even his employer, and even if he had, "[a]n employment relationship, on its own, will not create a fiduciary relationship." *Id*. at 1365 (citations omitted).

As for supposed "fraudulent inducement" (Count Twelve) by the Foundation, no "representation of material fact" by the Foundation is alleged. *See Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018) (citation omitted). (*See also* Am. Compl. ¶¶ 302–03.) Only other defendants are alleged to have made false statements. (*See, e.g.*, *id.* ¶ 98 (in bonus award letters, Archegos "claimed to be providing employees with a guarantee that they would not suffer any losses"); *id.* ¶ 156 ("Hwang and the Executive Defendants fraudulently misrepresented the trading and risk profile to Plan participants . . . .").) Similarly, the aiding-and-abetting claim

(Count Thirteen) against the Foundation fails for lack of any details of how the Foundation "provided substantial assistance to advance the fraud's commission." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (citation omitted).

### E.     Negligent-Misrepresentation Claim (Count Fifteen)

Nor does the Amended Complaint state a claim against the Foundation for negligent misrepresentation, for which Plaintiff would have to allege, among other things, that: (1) the Foundation "had a duty, as a result of a special relationship, to give correct information;" (2) the Foundation "made a false representation that [it] should have known was incorrect;" and (3) Plaintiff "reasonably relied on [the false statement] to his . . . detriment." *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (citation omitted).

Instead, Plaintiff alleges that the Defendants who owed him "a duty to exercise reasonable care" were those "within the Archegos management structure," not the Foundation.  (Am. Compl. ¶ 322.)  Nor could it have been reasonable for Plaintiff to rely on any statements about the Plan by the Foundation, a private charitable organization, rather than his own employer that was in the investment business.  Again, this count fails as a matter of law.

### F.     Promissory Estoppel Claim (Count Sixteen)

As for promissory estoppel, a plaintiff must allege: (1) "a promise [by the defendant] that is sufficiently clear and unambiguous," (2) "reasonable reliance on the promise by a party," and (3) "injury caused by the reliance." *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 32 (1st Dep't 2015) (citation omitted).  But the Amended Complaint does not allege that the Foundation ever made Plaintiff a promise, let alone that he detrimentally relied on a promise the Foundation made.  Instead, Plaintiff alleges promises about security of his deferred compensation allegedly made by "trusted executives and authority figures within Archegos," (Am. Compl. ¶ 333), not the Foundation.

### G.   Professional-Malpractice Claim (Count Seventeen)

Equally baseless is Plaintiff's claim against the Foundation for supposed professional malpractice (Count Seventeen).  The Amended Complaint alleges that the Foundation makes grants to charities, (*id.* ¶ 125), not that the Foundation ever agreed to act as an investment professional for Plaintiff.  *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 690 (S.D.N.Y. 2011) (granting defendants' motion to dismiss because the complaint "presents no facts upon which to base a professional malpractice claim").

### H.   Civil-Conspiracy Claim (Count Eighteen)

New York does not recognize an independent cause of action for civil conspiracy.  *Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 703 (2d Dep't 2023) (citation omitted).  Instead, a plaintiff must prove: (1) "a cognizable tort, coupled with an agreement between the conspirators regarding the tort" and (2) "an overt action in furtherance of the agreement."  *Id.* (citation omitted).  Here, however, the Amended Complaint does not contain a single allegation of a tort or "overt act"—or, indeed, *any* action at all—by the Foundation.  It alleges only that the Foundation was utilized improperly by other defendants, not that the Foundation itself ever took any improper action against Plaintiff.  Accordingly, Count Eighteen fails to state a claim against the Foundation and must be dismissed.

### I.   Tortious-Interference Claim (Count Nineteen)

Count Nineteen (Tortious Interference) starts with a single, group allegation that "Defendants Hwang, the Foundation, Pae, Mills, Jones, Becker, and Halligan tortiously interfered with Sullivan's contractual rights under the Plan."  (Am. Compl. ¶ 352.)  However, the factual allegations that follow nowhere mention the Foundation.  Given that no act by the Foundation is alleged relating to Plaintiff's contract at issue (the Plan), this count must be dismissed for failure to include, among other things, any allegation as to how the Foundation engaged in "intentional

procurement of a third-party's breach of that contract . . . ." *U.S. Bank Nat'l Ass'n v. Kahn Prop. Owner, LLC*, 206 A.D.3d 851, 853 (2d Dep't 2022) (citations omitted).

### J.     Alter-Ego Claim, Once Again (Count Twenty)

Finally, the last count of the Amended Complaint (County Twenty) tries to repackage Plaintiff's "alter ego" theory, this time without citing to ERISA.  This count, too, must be dismissed, to start with, because under New York law, "alter ego liability . . . does not constitute an independent cause of action."  *In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 405 (Bankr. S.D.N.Y. 2013) (citation omitted).

Nor does this count help Plaintiff save any of his other state-law counts.  The standard for an "alter ego" claim is even higher under state law than ERISA law, and this common-law theory is "highly disfavored."  *See Triemer v. Bobsan Corp.*, 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999) (citing *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989) ("Disregard of the corporate form is highly disfavored under New York law . . . and depends on a showing of fraud, which is subject to the strict pleading requirements of [Rule 9(b)].").  Even if evaluated under FRCP 8(a)'s normal pleading standard, establishing both complete domination and "that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences" is a "heavy burden" that, at least as to the Foundation, the Amended Complaint fails to meet.  *See TNS Holdings, Inc. v. MKI Secs. Corp.*, 680 N.Y.S.2d 891, 893 (1998); *see also Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Effectively, the corporation must be a sham *and exist for no other purpose* than as a vehicle for fraud." (emphasis added)).[4]

---

[4] The Foundation is incorporated in Delaware, so we also provide the Delaware standard, which the Amended Complaint also fails to meet.

Other than that, the highly disfavored "alter ego" analysis under state law is similar to the ERISA analysis discussed earlier—including the many factors that the Amended Complaint failed to allege. For example, under New York law, the following factors have been considered:

> (1) the absence of formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm['s] length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021) (citation omitted).

Whether analyzed under ERISA law, New York law, or Delaware law, the result is the same: Plaintiff's Amended Complaint fails to allege facts that show most or all of the "alter ego" factors. In particular:

- The Amended Complaint does not allege that the Foundation existed for no other purpose than fraud. Instead, it concedes that the Foundation is a 501(c)(3) private charitable organization formed in 2006 that grants tens of millions of dollars to dozens of charities each year. (Am. Compl. ¶ 125.)

- The Amended Complaint does not allege that the Foundation disregarded any corporate formalities. To the contrary, Plaintiff admits that the Foundation was founded seven years before Archegos and is "technically distinct from Hwang and Archegos." (*Id.* ¶¶ 58, 125.)

- Far from alleging that the Foundation was undercapitalized, the Amended Complaint alleges that as of 2021, the Foundation "held more than $800 million in assets." (*Id.* ¶ 126.) There is no allegation that the Foundation did not have separate bank accounts, separate boards that actually met, or differences in officers and employees.

- As already discussed, there is no allegation that funds donated to the Foundation for charitable purposes were ever improperly removed from it.  To the contrary, the Complaint alleges that some of the other defendants "wanted" to do so for personal purposes, but because of legal advice, "ultimately did not do so."  (*Id.* ¶ 198.)

- Despite some overlaps in leadership at times, the Amended Complaint fails to allege that the allegedly dominated nonprofit, the Foundation, lacked any independent "business discretion."   Plaintiff concedes that each year, the Foundation's board made decisions to award between $10 and 24 million in grants to "dozens of primarily religious-affiliated institutions and nonprofits." (*Id.* ¶ 125.) The Foundation's charitable purpose predates, and is completely distinct from, the business purpose of Archegos, an investment fund.  Indeed, while Archegos existed to make money, the Foundation existed (and exists) to give it away to charities.

- Nowhere does the Amended Complaint allege that Archegos or the Foundation ever paid or guaranteed the other corporation's debts.  Nor is there any allegation that (or how) Archegos ever used the Foundation's money as if it were its own.

- Moreover, nowhere does the Amended Complaint allege any acts of fraud by the Foundation.

When faced with conclusory "alter ego" complaints like this one—filled with group pleading, and no wrongful acts even alleged by the supposed alter ego defendant—the courts have not hesitated to dismiss alter ego claims at the pleading stage.  *See, e.g.*, *JMK Constr.*, 502 B.R. at 410–11 (granting motion to dismiss alter ego claim where the complaint failed to plead "any facts or allegations relating to specific acts committed *by [the defendant] himself* which caused harm to [plaintiff]—as opposed to actions taken by" another party (emphasis added)).  Similarly, in *Soter*, the Court dismissed an alter ego claim because, among other things, the complaint lacked sufficient "allegations of fact linking" specific defendants to the alleged wrongful act to support the claim. 523 F. Supp. 3d at 412–13.

Here, the crux of Plaintiff's Amended Complaint is that he is entitled to get back the funds he invested through the Plan of his employer, Archegos.  Plaintiff does not allege that the Foundation had any role in managing the Plan or in Archegos' collapse.  The most Plaintiff alleges is that other defendants *wanted* to use the Foundation in a manner that could have been improper,

but ultimately did not do so.  Plaintiff's attempt to get at the Foundation and its assets, which should go to charities, is wrong, legally and otherwise.

## **CONCLUSION**

Plaintiff's Amended Complaint, like his original Complaint, fails to state any valid claim against the Foundation.  The Foundation's motion should be granted, and Plaintiff's claims against the Foundation should be dismissed with prejudice.


Dated:  November 21, 2023

**LOWENSTEIN SANDLER LLP**
1251 Avenue of The Americas
New York, NY 10020
212.262.6700
*Counsel for The Grace And Mercy Foundation, Inc.*

By:_____
      Christopher Porrino
      Jeffrey J. Wild


On the Brief:  Rachel M. Dikovics
                Amanda K. Cipriano